JAMES D. VANDEWYNGEARDE (P58634)
PEPPER HAMILTON LLP
Suite 1800
4000 Town Center
Southfield, MI 48075-1505
248.359.7300 - Main
248.359.7387 - Direct
248.359.7700 - Fax
vandewyj@pepperlaw.com

M. KELLY TILLERY (PA BAR # 30380)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
215.981.4401 - Main
215.981.4740 – Fax
tilleryk@pepperlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IMPULSARIA, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> UNITED DISTRIBUTION GROUP, LLC, *et al.*, <br><br> Defendants. | CASE NO. 11-cv-1220-RHB <br> Hon. Robert Holmes Bell <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT E&A VIDEO AND MAGAZINE, INC. TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND  FORUM *NON CONVENIENS* GROUNDS |

## **TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | BACKGROUND | | 1 |
| | A. | Plaintiff's Complaint Against E&A | 1 |
| | B. | Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims | 3 |
| II. | ARGUMENT | | 5 |
| | A. | Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights | 5 |
| | | 1. Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights | 6 |
| | | 2. Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark | 9 |
| | | 3. The STIFF NIGHTS Mark Is Not Famous | 10 |
| | B. | This Court is Not the Proper Forum to Hear this Matter | 11 |
| | | 1. An Alternative Forum Exists in New Jersey | 11 |
| | | 2. The Public and Private Interests Factors Weigh in Favor of Dismissal | 11 |
| III. | CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 359 (6th Cir. 1998) ............ 6

*Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260 (5th Cir. 1975) ............................................ 6

*Desert Beauty, Inc. v. Mara Fox*, 617 F.Supp. 2d 185, 190 (S.D.N.Y. 2007) ................................ 7

*Erva Pharmaceuticals, Inc. v. American Cynamid Company*, 755 F.Supp. 36 (D.P.R. 1991) ............................................................................................................................. 7

*Greagri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) .................... 6

*GoClear LLC v. Target Corporation*, 2009 U.S. Dist. *LEXIS* 6649, at *11-13 (N.D.Cal. Jan. 22, 2009) ............................................................................................................................. 8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ............. 12

*Havana Club Holding, S.A. v. Galleon, S.A.*, 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998) ............................................................................................................................. 7

*Hensley Manufacturing, Inc. v. Propride, Inc.*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008) ............................................................................................................................. 5

*Innovation Ventures, LLC v. Bhellion Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, at *23-24 (E.D. Mich. July 26, 2011). ........................................................................... 10

*Kryvicky v. Scandanavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986) ............................ 12

*On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000) .............. 9

*Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ............................................................. 7

*In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48 (TTAB 1968) ............................................................. 6

*Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989) ............................................ 11

*Viron International Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002) ............................................................................................................................. 12

*Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903) ............................................................. 7

STATUTES

*15 U.S.C. § 1051* ............................................................................................................................. 6

*15 U.S.C. § 1119* ..................................................................................................................9

*15 U.S.C. § 1125(c)(2)(A)* ...................................................................................................10

*15 U.S.C. § 1127* ..................................................................................................................9

*18 U.S.C. § 371* ....................................................................................................................3

*18 U.S.C. § 1341* ..................................................................................................................3

*18 U.S.C. § 1343* ..................................................................................................................3

*18 U.S.C. § 1956(a)(1)(B)(i)* ................................................................................................3

*18 U.S.C. § 1957* ..................................................................................................................3

*21 U.S.C. § 801-971* .............................................................................................................9

*21 USC § 355* .......................................................................................................................8

*Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 et seq. (the "FDCA")* ..............3, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................5

J.Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19.124 (West, 2010 Ed.).................................................................................................................................7

Trademark Manual of Examining Procedure § 907 (8th Ed. 2011) ......................................9

# INDEX OF ISSUES

I. Whether or not Plaintiff, Impularia, LLC's Third Amended Complaint should be dismissed as to Defendant, E&A Video and Magazine, Inc., under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief could be granted.

II. Whether or not Plaintiff, Impularia, LLC's Third Amended Complaint should be dismissed as to Defendant, E&A Video and Magazine, Inc., on Forum *non conveniens* grounds.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND FORUM *NON CONVENIENS*

Defendant, E&A Video and Magazine, Inc. ("E&A"), by and through its undersigned counsel, pursuant to the Federal Rules of Civil Procedure and on Forum *non conveniens* grounds, hereby Moves to Dismiss Plaintiff, Impulsaria, LLC's ("Impulsaria" or "Plaintiff") Third Amended Complaint ("Complaint"), originally filed on January 19, 2012, as to Defendant, E&A.

E&A respectfully submits this Complaint should be dismissed because Plaintiff has no rights on which to base any of its claims. Plaintiff's alleged rights are based on illegal activity and are not subject to protection. Even if such rights ever existed, Plaintiff admits to abandoning them. Absent any protectable rights, Plaintiff cannot establish any claim on which any relief could be granted against any defendant, including E&A.

The Complaint should also be dismissed on Forum *non conveniens* grounds given that the likely location of relevant facts and witnesses reside outside of Michigan and that Plaintiff approached this Court with unclean hands.

### I.     BACKGROUND

#### A.     Plaintiff's Complaint Against E&A

On its face, Plaintiff's Complaint appears to outline garden-variety trademark infringement and counterfeiting claims. In such a case, a plaintiff, a purveyor of lawful goods and owner of a Federal Trademark Registration for these goods, files a lawsuit against defendants who are allegedly copying the trademark or offering inferior products under the mark, and are illegally profiting off of the goodwill the plaintiff has established in its mark. Plaintiff's Complaint appears to lay out this type of claim.

Plaintiff claims ownership to Federal Trademark Registration No. 3,621,660 for the mark STIFF NIGHTS for "dietary supplements," registered with the United States Patent and Trademark Office (USPTO) on May 19, 2009. (Compl., ¶ 111.). Plaintiff claims further ownership of a distinctive trade dress which incorporates the STIFF NIGHTS mark. (Compl., ¶¶ 104-05). Plaintiff further claims copyrights in its trademark and trade dress. (Compl., ¶¶ 113-14). (Collectively, E&A refers to Plaintiff's aforesaid alleged rights as "Alleged Rights").

Plaintiff complains its Alleged Rights have been violated by numerous parties across the country, including Defendant, E & A Video and Magazine, Inc. E&A is a New Jersey company located in Nutley, New Jersey. *See* Exhibit "A," Declaration of Larry Mills.

Plaintiff claims E&A violated its Alleged Rights by possessing and selling unauthorized counterfeit products under the STIFF NIGHTS mark and trade dress into Michigan. (Compl., ¶¶ 55, 126). The sole and entire basis for Plaintiff's claims against E&A relies on a single sales invoice from E&A describing a delivery of products to Haslett Investments in Perry, Michigan on or about March 15, 2011 (the "Invoice"). (*Fourth Mot. for Temp. Rest. Order*, Dkt. 86, Ex. 32); *see* Exhibit "B," a copy of the Invoice as pulled from Dkt. 86, Ex. 32. The Invoice identifies six products, none of which are identified as a product named STIFF NIGHTS. *See* Ex. "B." Plaintiff provides no other allegation or supporting affidavit to establish the Invoice identified a product named STIFF NIGHTS. Plaintiff also fails to allege that if such product did exist, that it was counterfeit and was not legally obtained from Plaintiff.[1]

Plaintiff makes no other allegations against E&A and provides no other evidence or affidavit in support of its claims against E&A.

---

[1] Plaintiff also failed to offer any such evidence in support of its claims during the February 6, 2012 Show Cause Hearing.

B.  **Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims**

Plaintiff conveniently withholds several key facts from the Complaint that severely undercut any support it might have for its claims. Plaintiff deliberately fails to mention its Alleged Rights were and are based solely upon the sale of an illegal controlled substance in violation of multiple Federal Statutes. Specifically, Plaintiff omits from its papers that its principal, "Erb Avore," is a named Unindicted Co-Conspirator (UC1), in a Federal Indictment against its own manufacturer in the District of Utah and is currently being investigated there and in the State of Michigan for similar conduct. (*Resp. to Fourth Motion*, Dkt. 119, Exs. C and D); see Exhibits "C" and "D," copies of Exs. C and D. from *Response to Fourth Motion*, Dkt. 119.

In order to legally market a drug in interstate commerce, a manufacturer is required to secure approval from the Food and Drug Administration ("FDA"). Absent federal approval, a manufacturer/distributor who markets/sells a drug in interstate commerce is in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321 *et seq.* ("FDCA"). A deeper investigation of the facts underlying Plaintiff's claims reveals a plaintiff and its supplier being investigated for thirty-one (31) criminal acts all relating to the unauthorized sale of a controlled substance (STIFF NIGHTS) under the guise of a "dietary supplement" that defrauded the government and deceived the public.

On April 6, 2011, the U.S. government filed a Thirty-One Count Indictment[2] against Kelly Dean Harvey (the "Harvey Indictment"), a Utah manufacturer of a product called STIFF NIGHTS – the same STIFF NIGHTS for which Plaintiff claims rights. *See* Ex. "C." Specifically, the Harvey Indictment identified the STIFF NIGHTS product analyzed as

---

[2] The 31 counts were comprised of violations of: 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering), and 18 U.S.C. § 1957 (money transaction money laundering).

containing sulfoaildenafil, an active ingredient in the product commonly branded VIAGRA®. *See* Ex. "C" at ¶¶ 4, 29. Kelly Dean Harvey was identified as the manufacturer, <u>and Plaintiff's President, "Erb Avore" was identified as the Unindicted Co-Conspirator</u>. *See* Ex. "C" at ¶ 13.

The conspiracy between Harvey and Plaintiff began at least as early as April 2007[3] and continued until June 2010, and was designed as a "scheme and artifice to fraudulently manufacture, distribute, and market in interstate commerce a drug as a 'dietary supplement' to evade and avoid appropriate government regulation by the FDA and for financial gain." *See* Ex. "C" at ¶¶ 16, 17. According to the Harvey Indictment, from April 2007 to June 2010, Plaintiff invested over $2 million in such erectile dysfunction products (STIFF NIGHTS products) manufactured by Kelly Dean Harvey and his companies, and sold the product via the website www.stiffnights.com as a male sexual stimulant and dietary supplement, without authorization by the FDA and falsely and fraudulently omitting the illegal active ingredient. *Id.* at ¶¶ 33, 34. That lawsuit, and another co-pending criminal indictment against Harvey and co-defendants Mahesh Kuma Bisht and Jorge Eduardo Campos are ongoing. *See* Ex. "D" (the "Harvey Indictment 2").

Beginning in June 2010, Plaintiff abandoned all use of its alleged mark, including any manufacturing, distribution or sale of any products bearing the STIFF NIGHTS mark and trade dress. (Compl., ¶ 122). Plaintiff has now not used its STIFF NIGHTS trademark (whether on legitimate or illegal goods) for nearly two (2) years.

---

[3] Note that as part of its application for registration of its alleged mark, Plaintiff declared under oath to the USPTO that use in commerce of the STIFF NIGHTS mark began on November 1, 2007. (*Resp. to Fourth Motion*, Dkt. 119, Ex. B); *see* Exhibit "E," a copy of Ex. B to *Response to Fourth Motion*, Dkt. 119. This claimed use in commerce coincides with what is identified in the Harvey Indictment as <u>unlawful</u> use of the STIFF NIGHTS mark.

## II. ARGUMENT

E&A respectfully submits this Complaint should be dismissed because Plaintiff has no legal rights on which to base its claims. Given Plaintiff's unlawful conduct, the Complaint, and the evidence and affidavit filed in support thereof, is devoid of any legal basis on which relief against E&A may be granted. Moreover, the Complaint should be dismissed on Forum *non conveniens* grounds.

### A. Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights

Rule 12(b)(6) permits a district court to dismiss a complaint that fails to state a claim on which relief may be granted. Fed. R. Civ. P. § 12(b)(6); *see Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008). The rule permits E&A to test whether Plaintiff, as a matter of law, is entitled to any relief based on the facts alleged in its Complaint. *See Hensley Mftg., Inc.*, 622 F. Supp. 2d at 558. Plaintiff's Complaint may be dismissed if it fails to prove any claim on which it would be entitled to relief. *See id.* The complaint must contain allegations with respect to *all material elements necessary to sustain a recover under some viable legal theory. See id.* (emphasis added).

Plaintiff's Complaint should be dismissed under this standard because it fails to meet the most basic of elements needed to support its various claims – the ownership of a valid protectable right. Because Plaintiff's Alleged Rights were unlawfully obtained, they are not recognizable by law. Plaintiff therefore does not own any protectable rights. With any rights to protect, Plaintiff cannot claim to have been injured and so the Complaint fails to outline any claim of injury that needs to be remedied by this Court.

### 1. Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights

Plaintiff's Complaint relies primarily upon its ownership of the STIFF NIGHTS federally registered trademark and the accompanying trade dress to establish its various claims of trademark infringement, trade dress infringement, and unfair competition. Plaintiff also relies on these trademark rights to establish its copyright infringement claims. Plaintiff's Alleged Rights do not exist, and have never existed, because they are based on unlawful activity.

Trademark rights in the U.S. are based upon use. *See Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 359 (6th Cir. 1998); citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260 (5th Cir. 1975) ("the exclusive right to a trademark belongs to one who first uses it in connection with specified goods"). One cannot claim or enforce trademark rights in a mark that it has not used and one cannot secure a U.S. Federal Trademark Registration absent "use in commerce." 15 U.S.C. § 1051 (Lanham Act – "the owner of a trademark used in commerce may request registration of its trademark on the principal register…").

That 'use in commerce,' however, must be lawful and legal use of the mark in commerce. *In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48 (TTAB 1968). "It has long been the policy of the [US]PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*." *Greagri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (adopting USPTO policy). "To hold otherwise would be to put the government in an anomalous position of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws" thereby creating bad public policy that rewards those parties who fail to comply with regulations. *Id.*

This argument is identified today as the "unlawful use defense" and is essentially an extension of the age-old 'unclean hands' defense, wherein:

> "unclean hands really just means that in equity as in law the plaintiff's fault, like the defendant's, is relevant to the question of what if any remedy the plaintiff is entitled to. An obviously sensible application of this principle is *to withhold an equitable remedy that would encourage or reward illegal activity.*"

*Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir. 1985). As a result, and when applied in a trademark context, the result is identical:

> "It is well settled that if a person wishes his trade-mark property to be protected by a court of equity, he must come into court with clean hands, *and if it appears that the trade-mark for which he seeks protection is itself a misrepresentation to the public,* and has acquired a value with the public by fraudulent misrepresentations in advertisements, *all relief will be denied to him.*"

*Worden v. California Fig Syrup Co.,* 187 U.S. 516 (1903) (emphasis added).

Although not the most popular subject of legal opinions (presumably as those who have fraudulently acquired trademark rights may be wary of enforcing them), Courts across the country follow the same rule when assessing the merits of a plaintiff's assertion of trademark rights when those rights were acquired based on a violation of U.S. law. *See e.g.; Desert Beauty, Inc. v. Mara Fox,* 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (unlawful use defense has origins in common law doctrine of unclean hands and prevents the government from having to extend the benefits of trademark protection to a seller who violates that government's laws); *Havana Club Holding, S.A. v. Galleon, S.A.,* 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998) (the availability of injunctive relief is affected "when a plaintiff attempts to enforce a right acquired through inequitable conduct"); *Erva Pharmaceuticals, Inc. v. American Cynamid Company,* 755 F. Supp. 36, (D.P.R. 1991) (to assert trademark rights, the prior use that the trademark is based upon must have been lawful); *see also* J.Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 19.124 (West, 2010 Ed.) (addressing history of the unclean hands – unlawful use defense).

In fact, in a case factually similar to the present, *GoClear LLC v. Target Corporation*, the Court found a product bearing the trademark CLEAR X, advertised as a non-chemical acne solution, was actually a "drug" within meaning of FDCA which may not be introduced in interstate commerce unless approved under 21 U.S.C. § 355. *See GoClear LLC v. Target Corp.*, 2009 U.S. Dist. LEXIS 6649, at *11-13 (N.D.Cal. Jan. 22, 2009). In *GoClear*, the Court found Target's effort to claim prior rights in the CLEAR X mark (through a predecessor) from use in commerce dating back to 2004, was insufficient because that use was not "lawful use" and in violation of the FDCA since Target never obtained approval by the federal government to market such "drug." *Id.* Appropriately, the Court upheld the unlawful use defense and prohibited the trademark "owner" from asserting rights in the mark against the alleged infringer.

Similar facts are applicable here. Plaintiff secured its Alleged Rights through illegitimate means. If even half the facts in the federal government's Indictment against Kelly Dean Harvey are correct, it is clear that any such use of the STIFF NIGHTS mark was in violation of one or more FDA labeling laws.

Plaintiff averred it was lawfully using the STIFF NIGHTS mark to secure its Federal Registration. The declaration submitted by Plaintiff's President, "Erb Avore," attested to the fact that the mark STIFF NIGHTS was used in commerce [legally] at least as early as November 1, 2007 for "male sexual stimulant; herbal supplement." *See* "E." Plaintiff's averments to the USPTO were false.

The USPTO accepted these false representations without question and ultimately registered the Trademark on May 19, 2009. Plaintiff did not reveal to the USPTO that "use in commerce" was based on the unlawful use of a controlled substance/illegal drug that was in

-8-

violation of multiple Federal Laws, including the FDCA. Under USPTO guidelines, it was not required to investigate the content of the stimulant, but if it knew, the Application would have been denied.[4] Had the USPTO been aware of this illegal use, the registration would never have issued.

Plaintiff's unlawful use of the STIFF NIGHTS mark from day one invalidates any rights it might have had to the mark. Plaintiff's Federal Registration is certainly subject to cancellation[5] and any common law rights claimed in the mark must be washed away as trademark rights may only be acquired by use in commerce – lawful use in commerce. Likewise, any trade dress or copyright claims that included or were based on the illegal use of this alleged mark also fail.

Without valid rights, the Complaint fails to establish any rights which would be subject to protection. Without rights to protect, the Complaint fails to establish a valid claim on which relief could be granted, and so therefore, should be dismissed.

### 2. Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark

Notwithstanding that Plaintiff has never legally used its trademarks and trade dress in commerce, its activity beginning in June 2010 makes it clear that Plaintiff abandoned any and all use of its mark. A registered trademark may be considered abandoned if its "use has been discontinued with intent not to resume such use." *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000), *citing* 15 U.S.C. § 1127.

---

[4] "Generally, the USPTO presumes that an applicant's use of the mark in commerce is lawful and does not inquire whether such use is lawful unless the record or other evidence shows a clear violation of law, such as the sale or transportation of controlled substance. *See* Trademark Manual of Examining Procedure § 907 (8th Ed. 2011) (specifically noting that violations of 21 U.S.C. § 801-971, the Controlled Substances Act does not constitute lawful use in commerce permitting registration).

[5] Pursuant to 15 U.S.C. § 1119, a federal District Court may "determine the right to registration [and] order the cancellation of registrations". If E&A's motion is not granted and it is forced to proceed with this litigation, Defendant E&A will counterclaim for cancellation of the STIFF NIGHTS trademark.

Plaintiff admits it has not used the alleged STIFF NIGHTS trademark in commerce on any goods for nearly two years. (Compl., ¶ 122). Plaintiff further admits it has not manufactured or distributed any products since that time. (Compl., ¶ 122). The Complaint contains no allegations that Plaintiff sought or is seeking a new manufacturer or reformulation for its product. The Complaint contains no allegation that Plaintiff attempted or is attempting to bring any legitimate product to the market. Instead, the Complaint makes it clear that Plaintiff just stopped all production and allowed nearly two years to pass before filing a lawsuit based on ill-gotten Alleged Rights.

The Complaint and Plaintiff's lack of conduct indicate an intent to abandon the STIFF NIGHTS trademark. Plaintiff's lack of conduct also demonstrates that Plaintiff had little interest in making <u>legitimate</u> use of the mark over the last two years or in doing so going forward. Plaintiff and its manufacturer are under criminal investigation concerning the illegal sale of its products. There simply is nothing to establish that Plaintiff has or will have the ability to resume (or better put, initiate) legal use of its mark. To the extent Plaintiff established any legitimate trademark rights, which it has not, those rights have expired and are not likely to resume. Plaintiff's claims surrounding those rights should therefore be dismissed.

### 3. The STIFF NIGHTS Mark Is Not Famous

Plaintiff reaches in Count VI to the Complaint by claiming the STIFF NIGHTS mark and trade dress have become "famous" as a result of Plaintiff's continuous use of the name and trade dress in connection with the sale of its goods. Under a claim for Federal Trademark Dilution, a mark that is allegedly being diluted must be "famous," meaning that is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). To be considered famous, "a mark must be truly prominent and renowned." *Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, *23-24 (E.D. Mich.

July 26, 2011) (internal citations omitted). STIFF NIGHTS is <u>not</u> a truly renowned mark such as NIKE, MCDONALDS or COCA COLA.[6] Plaintiff's claims related to dilution must be dismissed.

### B. This Court is Not the Proper Forum to Hear this Matter

A complaint may be dismissed on Forum *non conveniens* grounds where the defendant establishes the claim can be heard in an available and adequate alternative forum, and that the balance of public and private factors merit the proceeding being conducted in that alternative forum. *See Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989).

Plaintiff's Complaint should be also be dismissed on such grounds. This Court is not the most convenient forum given the facts surrounding this proceeding and another suitable forum is readily available. Further, Plaintiff's blatant disregard for the truth in detailing its claims flies in the face of the public's interest.

#### 1. An Alternative Forum Exists in New Jersey

Concerning the first factor, there exists a suitable and more convenient alternative forum waiting in New Jersey. E&A and its employees are located in New Jersey and would all be subject to the jurisdiction of the District Court located in New Jersey. Plaintiff has alleged widespread advertising and sales across the United States, which establishes its presence in New Jersey. (Compl., ¶¶ 115, 116). Should this Court dismiss this Complaint without prejudice, Plaintiff has every right to proceed with a claim against E&A in New Jersey.

#### 2. The Public and Private Interests Factors Weigh in Favor of Dismissal.

Courts of this circuit weigh a number of public and private factors in assessing a whether dismissal on Forum *non conveniens* grounds is appropriate. These factors mimic those

---

[6] To the extent any erectile dysfunction treatment is famous, E&A submits such fame likely rests with a mark for a valid medication such as VIAGRA®, and not Plaintiff's illegal "dietary supplement."

to be considered in a request to change venue under Rule 1404. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986). Those factors include:

> "(1) convenience of the parties and the witnesses; (2) accessibility to sources of proof; (3) the costs of obtaining testimony of witnesses; (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interest of justice.... Other relevant factors include (1) the relative congestion of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause."

*Viron International Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002).

The first four factors support dismissing this proceeding in favor of one which could be filed in New Jersey. Plaintiff's claims are directed to E&A's alleged unlawful possession, sale and distribution of products bearing Plaintiff's alleged trademarks. E&A is based in New Jersey, and its products and the records related to those products also reside in New Jersey, and not in Michigan. *See* Ex. "A." To the extent any investigation is needed into the nature and scope of E&A's business, that inquiry will occur in New Jersey, and not in Michigan. Likewise, any of E&A's employees that may have been involved in this alleged unlawful activity that may be called as potential witnesses all reside or work in New Jersey, and not Michigan, and are therefore subject to personal jurisdiction in New Jersey, and not necessarily in Michigan. *See* Ex. "A." It goes without saying that it would be less expensive to conduct a proceeding in New Jersey, where the likely witnesses and evidence reside.[7]

---

[7] E&A notes that given Plaintiff's president, Erb Avore, failed to appear at the Show Cause Hearing, E&A suspects Mr. Avore will likewise attempt to avoid attending additional proceedings given the ongoing criminal investigation involving Plaintiff's business.

The fifth factor, related to the public interest, <u>weighs heavily</u> in favor of dismissing Plaintiff's Complaint. Plaintiff deliberately misled this Court as to the nature of its Alleged Rights when it filed its Complaint. Plaintiff further concealed its involvement with a criminal investigation that goes directly to the legality of its business operations and its claims to trademark rights related to its business. Plaintiff should not be rewarded for its unlawful behavior and the cavalier approach taken in drafting its Complaint. Continuing this proceeding in Michigan only condones this egregious behavior and lends credence to a fraudulently obtained trademark and to Plaintiff's criminal activities.

Several of the remaining factors are neutral. E&A notes this Court and United States District Court in New Jersey are equally qualified to hear a matter related to alleged trademark infringement, and both courts are likely equally busy. There is no relevant forum selection clause at issue between the parties, and so this factor is also neutral.

Finally, notwithstanding Plaintiff's forum choice, E&A suggests New Jersey has a strong interest in ensuring its citizens (E&A) are not afoul with the law, and so would be active in enforcing any judgment against E&A, in the unlikely event that Plaintiff prevails on its claims. Likewise, E&A concedes this Court, and Michigan, certainly have an interest in maintaining a watchful eye over Plaintiff's activities. However, E&A is but one of a laundry list of defendants against whom Plaintiff has raised its frivolous claims. A dismissal of the Complaint against E&A would not prevent this Court from maintaining oversight over Plaintiff's remaining claims (or Michigan over its ongoing criminal investigation).

In balancing these factors, E&A suggests the weight of the factors clearly favor dismissal. The Court cannot ignore Plaintiff's unclean hands and its conscious effort to mislead the Court as to the actual facts behind Plaintiff's illegal use of its STIFF NIGHTS trademark and

efforts to enforce a trademark despite never legally using the trademark in commerce. E&A's motion to dismiss on Forum *non conveniens* grounds is valid, the factors weigh in E&A's favor, and Plaintiff's Complaint should be dismissed.

### III. CONCLUSION

Plaintiff's Complaint must be dismissed because Plaintiff has no rights on which to base its claims. The Complaint therefore fails to plead all materials elements to necessary to establish its claims contained therein. Even if the Complaint did meet this initial burden, which it does not, this Court is not the proper forum to hear this proceeding. Given the location of the necessary facts and witnesses, and the complete disregard for the truth Plaintiff has demonstrated in detailing its claims, this Complaint should be dismissed.

Date: March 26, 2012                                   Respectfully submitted,


                                                       s/James D. VandeWyngearde
                                                       JAMES D. VANDEWYNGEARDE (P58634)
                                                       PEPPER HAMILTON LLP
                                                       Suite 1800
                                                       4000 Town Center
                                                       Southfield, MI 48075-1505
                                                       248.359.7300 - Main
                                                       248.359.7387 - Direct
                                                       248.359.7700 - Fax
                                                       vandewyj@pepperlaw.com

                                                       M. KELLY TILLERY (PA BAR # 30380)
                                                       PEPPER HAMILTON LLP
                                                       3000 Two Logan Square
                                                       Eighteenth & Arch Streets
                                                       Philadelphia, PA 19103-2799
                                                       215.981.4401 - Main
                                                       215.981.4740 – Fax
                                                       tilleryk@pepperlaw.com

                                                       *Counsel for Defendant*
                                                       *E&A Video & Magazine, Inc.*