# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IMPULSARIA, LLC,<br>a Nevada limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED DISTRIBUTION GROUP, LLC, *et al.*,<br><br>        Defendants. | Case No. 11-1220<br><br>Hon. Robert Holmes Bell<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TOP5SUPPS.COM AND BLAKE KING'S MOTION TO DISMISS AND JOINDER IN DEFENDANT E&A VIDEO AND MAGAZINE, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12

JAMES D. VANDEWYNGEARDE (P58634)
PEPPER HAMILTON LLP
Suite 1800
4000 Town Center
Southfield, MI  48075-1505
248.359.7300 - Main
248.359.7387 - Direct
248.359.7700 - Fax
vandewyj@pepperlaw.com

M. KELLY TILLERY (PA BAR # 30380)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4401 - Main
215.981.4740 – Fax
tilleryk@pepperlaw.com

ERICA W. STUMP*
ERICA W. STUMP, P.A.
110 East Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
786.506.1088
erica@ericawstump.com
*Application for Admittance to be filed*

*Counsel for Defendants*
*Blake King and Top5supps.com*

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

     A.      Plaintiff's Complaint Against Top5 and King ..................................... 1

     B.      Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims................... 3

III.    ARGUMENT ....................................................................................................... 5

     A.      Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights .................................................................................................. 5

          1.      Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights................................. 6

          2.      Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark ................. 9

          3.      The STIFF NIGHTS Mark Is Not Famous ............................... 10

     B.      Plaintiff ................................................................................................ 11

     C.      This Court Lacks Jurisdiction Over Mr. Blake King ........................... 11

          1.      Standard for Lack of Personal Jurisdiction ............................... 12

          2.      Michigan's Long-Arm Statute ................................................... 12

          3.      Due Process ............................................................................... 13

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Prods. & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 549 (6th Cir.2007)....................13

*Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 359 (6th Cir. 1998)..............6

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F. 3d 683 ............................................13, 14

*Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002) ........................................................................12

*Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260 (5th Cir. 1975)............................................6

*Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 479 (6th Cir.2003)................13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)...........................................................................................................................13

*CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (1996)............................................................12

*Desert Beauty, Inc. v. Mara Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007)...............................7

*Erva Pharmaceuticals, Inc. v. American Cynamid Company*, 755 F. Supp. 36 (D.P.R. 1991) .......................................................................................................................................7

*Flagstar Bank, FSB v. Centerpointe Financial Inc.*, 2011 WL 2111984 (E.D. Mich. 2011)........15

*Foodland Distribs. v. Al-Naimi*, 220 Mich.App. 453, 559 N.W. 2d 379, 381 (1996)..................18

*GoClear LLC v. Target Corp.*, 2009 U.S. Dist. LEXIS 6649, at *11-13 (N.D.Cal. Jan. 22, 2009) ...........................................................................................................................................8

*Greagri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007)........................6

*Havana Club Holding, S.A. v. Galleon, S.A.*, 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998) ..........................................................................................................7

*Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008)....................................................................................................................................5

*Hi-Tech Pharmaceuticals, Inc. v. Demelo*, Civil Action No. 1:07-CV-1934-RWS (N.D. GA March 31, 2009)....................................................................................................................16

*Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, *23-24 (E.D. Mich. July 26, 2011) ......................................................................................10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ...........13

*Joyner v. Mers*, 2010 WL 3419468 (E.D. Mich 2010), *affirmed* 451 Fed.Appx. 505 (6th Cir. 2011) .......................................................................................................................................15

*Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir. 1988).............................................................................................................................18

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992) ........................................................................................................................................12

*North Point Dealings, Inc. v. Argo International, Inc.*, 2007 WL 1976558 (E.D. Mich 2007) .............................................................................................................................................14

*On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000).................9

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ...............................17

*Seasword v. Hilti*, 449 Mich. 542, 547, 537 N.W.2d 221 (1995) ..................................................17

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*
475 F.3d 783, 798 (6th Cir. 2007) ...............................................................................17, 18

*Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ............................................................7

*In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48 (TTAB 1968)................................................................6

*Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.2d 357, 362 (6th Cir. 2008)...........17

*Valance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000) ...........................17

*Weller v Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974) ....................................................17

*Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903) ............................................................7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)............................................................................................................13

**STATUTES**

*15 U.S.C. § 1051* ...........................................................................................................................6

*15 U.S.C. § 1119* ...........................................................................................................................9

*15 U.S.C. § 1125(c)(2)(A)* ...........................................................................................................10

*15 U.S.C. § 1127* ...........................................................................................................................9

*18 U.S.C. § 371* .............................................................................................................................3

*18 U.S.C. § 1341* ................................................................................................................3

*18 U.S.C. § 1343* ................................................................................................................3

*18 U.S.C. § 1956(a)(1)(B)(i)* .............................................................................................3

*18 U.S.C. § 1957* ................................................................................................................3

*21 U.S.C. § 355* ................................................................................................................8

*21 U.S.C. § 801-971* ..........................................................................................................9

## I.      INTRODUCTION

Defendants, Top5 and Mr. King, by and through their undersigned counsel, pursuant to the Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), hereby move to dismiss Plaintiff, Impulsaria, LLC's ("Impulsaria" or "Plaintiff") Third Amended Complaint ("Complaint"), originally filed on January 19, 2012, as to Defendants, Top5 and Mr. King.  Top5 and Mr. King also hereby join the Motion to Dismiss filed by E&A Video and Magazine, Inc. [Doc. Nos. 183, 184] as the reasons for dismissal asserted in that motion apply with equal force to Top5 and Mr. King.

Top5 and Mr. King respectfully submit this Complaint should be dismissed because Plaintiff has no rights on which to base any of its claims.  Plaintiff's alleged rights are based on illegal activity and are not subject to protection.  Even if such rights ever existed, Plaintiff admits to abandoning them.  Absent any protectable rights, Plaintiff cannot establish any claim on which any relief could be granted against any defendant, including Top5 and King. Moreover, this Court lacks personal jurisdiction as to Mr. King.

## II.     BACKGROUND

### A.      <u>Plaintiff's Complaint Against Top5 and King</u>

On its face, Plaintiff's Complaint appears to outline garden-variety trademark infringement and counterfeiting claims.   In such a case, a plaintiff, a purveyor of lawful goods and owner of a federal trademark registration for these goods, files a lawsuit against defendants who are allegedly copying the trademark or offering inferior products under the mark, and are illegally profiting off of the goodwill the plaintiff has established in its mark.   Plaintiff's Complaint appears to lay out this type of claim.

Plaintiff claims ownership to Federal Trademark Registration No. 3,621,660 for the mark STIFF NIGHTS for "dietary supplements," registered with the United States Patent and

Trademark Office (USPTO) on May 19, 2009. (Complaint, ¶ 111.).  Plaintiff claims further ownership of a distinctive trade dress which incorporates the STIFF NIGHTS mark.  (Complaint, ¶¶ 104-05).  Plaintiff further claims copyrights in its trademark and trade dress.  (Complaint, ¶¶ 113-14).  (Collectively, Top5 and Mr. King refer to Plaintiff's aforesaid alleged rights as "Alleged Rights").

Plaintiff complains its Alleged Rights have been violated by numerous parties across the country, including Defendants Top5 and Mr. King.  Top5 is a domain name owned and operated by BL Supplements, LLC ("BL").  See Exhibit "A," Declaration of BL.  Mr. King is a Tennessee resident.  See Exhibit "B," Declaration of Mr. King.

Plaintiff claims Top5 and Mr. King violated its Alleged Rights by possessing and selling unauthorized counterfeit products under the STIFF NIGHTS mark and trade dress into Michigan.  (Compl., ¶¶ 55, 126).  The sole and entire basis for Plaintiff's claims against Top5 and Mr. King relies on a printout from the website www.top5supps.com, which it entitles "evidence of counterfeit sales by Blake King dba www.top5supps.com".  (Exhibit "21" to the Complaint, attached hereto as Exhibit "F").  Notably and unlike other defendants in this action, Plaintiff does not attach an invoice for the purchase of product from Top5 or Mr. King (or even BL).  Plaintiff provides no other allegation or supporting evidence to establish it purchased any product named STIFF NIGHTS from Top5, Mr. King, or BL.

Plaintiff makes no other allegations against Top5 and Mr. King and provides no other evidence or declaration in support of its claims against Top5 and Mr. King.

-2-

**B.**      **Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims**[1]

Plaintiff conveniently withholds several key facts from the Complaint that severely undercut any support it might have for its claims.  Plaintiff deliberately fails to mention its Alleged Rights were and are based solely upon the sale of an illegal controlled substance in violation of multiple Federal Statutes.  Specifically, Plaintiff omits from its papers that its principal, "Erb Avore," is a named Unindicted Co-Conspirator (UC1), in a Federal Indictment against its own manufacturer in the District of Utah and is currently being investigated there and in the State of Michigan for similar conduct.  (*Resp. to Fourth Motion*, Dkt. 119, Exs. C and D); s*ee* Exhibits "C" and "D," copies of Exs. C and D. from *Response to Fourth Motion*, Dkt. 119.

In order to legally market a drug in interstate commerce, a manufacturer is required to secure approval from the Food and Drug Administration ("FDA").  Absent federal approval, a manufacturer/distributor who markets/sells a drug in interstate commerce is in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321 *et seq.* ("FDCA").  A deeper investigation of the facts underlying Plaintiff's claims reveals a plaintiff and its supplier being investigated for thirty-one (31) criminal acts all relating to the unauthorized sale of a controlled substance (STIFF NIGHTS) under the guise of a "dietary supplement" that defrauded the government and deceived the public.

On April 6, 2011, the U.S. government filed a Thirty-One Count Indictment[2] against Kelly Dean Harvey (the "Harvey Indictment"), a Utah manufacturer of a product called STIFF NIGHTS – the same STIFF NIGHTS for which Plaintiff claims rights.  *See* Ex. "C."

---

[1] This Background, § B is reproduced from § I.B. of Defendant E&A Video and Magazine, Inc.'s Memorandum of Law in Support of its Motion to Dismiss.  [Doc. No. 184]

[2] The 31 counts were comprised of violations of: 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering), and 18 U.S.C. § 1957 (money transaction money laundering).

Specifically, the Harvey Indictment identified the STIFF NIGHTS product analyzed as containing sulfoaildenafil, an active ingredient in the product commonly branded VIAGRA®. *See* Ex. "C" at ¶¶ 4, 29.  Kelly Dean Harvey was identified as the manufacturer, and Plaintiff's President, "Erb Avore" was identified as the Unindicted Co-Conspirator.  *See* Ex. "C" at ¶ 13.

The conspiracy between Harvey and Plaintiff began at least as early as April 2007[3] and continued until June 2010, and was designed as a "scheme and artifice to fraudulently manufacture, distribute, and market in interstate commerce a drug as a 'dietary supplement' to evade and avoid appropriate government regulation by the FDA and for financial gain."  *See* Ex. "C" at ¶¶ 16, 17.  According to the Harvey Indictment, from April 2007 to June 2010, Plaintiff invested over $2 million in such erectile dysfunction products (STIFF NIGHTS products) manufactured by Kelly Dean Harvey and his companies, and sold the product via the website www.stiffnights.com as a male sexual stimulant and dietary supplement, without authorization by the FDA and falsely and fraudulently omitting the illegal active ingredient.  *Id.* at ¶¶ 33, 34. That lawsuit, and another co-pending criminal indictment against Harvey and co-defendants Mahesh Kuma Bisht and Jorge Eduardo Campos are ongoing.  *See* Ex. "D" (the "Harvey Indictment 2").

Beginning in June 2010, Plaintiff abandoned all use of its alleged mark, including any manufacturing, distribution or sale of any products bearing the STIFF NIGHTS mark and trade dress.  (Compl., ¶ 122)  Plaintiff has now not used its STIFF NIGHTS trademark (whether on legitimate or illegal goods) for nearly two (2) years.

---

[3] Note that as part of its application for registration of its alleged mark, Plaintiff declared under oath to the USPTO that use in commerce of the STIFF NIGHTS mark began on November 1, 2007.  (*Resp. to Fourth Motion*, Dkt. 119, Ex. B); *see* Exhibit "E," a copy of Ex. B to *Response to Fourth Motion*, Dkt. 119.  This claimed use in commerce coincides with what is identified in the Harvey Indictment as unlawful use of the STIFF NIGHTS mark.

## III.    ARGUMENT

Top5 and King respectfully submit that Plaintiff's Complaint should be dismissed because Plaintiff has no legal rights on which to base its claims.  Given Plaintiff's unlawful conduct, the Complaint, and the evidence and Declaration filed in support thereof, is devoid of any legal basis on which relief against Top5 and King may be granted.  Moreover, the Complaint should be dismissed because this Court lacks personal jurisdiction over King.

### A.    Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights[4]

Rule 12(b)(6) permits a district court to dismiss a complaint that fails to state a claim on which relief may be granted.  Fed. R. Civ. P. § 12(b)(6); *see Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008).  The rule permits Top5 and Mr. Blake to test whether Plaintiff, as a matter of law, is entitled to any relief based on the facts alleged in its Complaint.  *See Hensley Mftg., Inc.*, 622 F. Supp. 2d at 558.  Plaintiff's Complaint may be dismissed if it fails to prove any claim on which it would be entitled to relief. *See id.*  The complaint must contain allegations with respect to *all material elements necessary to sustain a recover under some viable legal theory.  See id.* (emphasis added).

Plaintiff's Complaint should be dismissed under this standard because it fails to meet the most basic of elements needed to support its various claims – the ownership of a valid protectable right.  Because Plaintiff's Alleged Rights were unlawfully obtained, they are not recognizable by law.  Plaintiff therefore does not own any protectable rights.  With any rights to protect, Plaintiff cannot claim to have been injured and so the Complaint fails to outline any claim of injury that needs to be remedied by this Court.

---

[4] The argument asserted in this § A is in large part a reproduction of Argument § A as asserted in Defendant E&A Video and Magazine, Inc.'s Memorandum of Law in Support of its Motion to Dismiss, which is incorporated and joined herein.  [Doc. No. 184]

1.    **Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights**

Plaintiff's Complaint relies primarily upon its ownership of the STIFF NIGHTS federally registered trademark and the accompanying trade dress to establish its various claims of trademark infringement, trade dress infringement, and unfair competition.  Plaintiff also relies on these trademark rights to establish its copyright infringement claims.  Plaintiff's Alleged Rights do not exist, and have never existed, because they are based on unlawful activity.

Trademark rights in the U.S. are based upon use.  *See Allard Enters. v. Advanced Programming Res., Inc*., 146 F.3d 350, 359 (6th Cir. 1998); citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.,* 508 F.2d 1260 (5th Cir. 1975) ("the exclusive right to a trademark belongs to one who first uses it in connection with specified goods").  One cannot claim or enforce trademark rights in a mark that it has not used and one cannot secure a U.S. Federal Trademark Registration absent "use in commerce."  15 U.S.C. § 1051 (Lanham Act – "the owner of a trademark used in commerce may request registration of its trademark on the principal register…").

That 'use in commerce,' however, must be lawful and legal use of the mark in commerce.  *In re Stellar Int'l, Inc.,* 159 U.S.P.Q. 48 (TTAB 1968).  "It has long been the policy of the [US]PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful.*"  *Greagri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (adopting USPTO policy).  "To hold otherwise would be to put the government in an anomalous position of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws" thereby creating bad public policy that rewards those parties who fail to comply with regulations.  *Id.*

This argument is identified today as the "unlawful use defense" and is essentially an extension of the age-old 'unclean hands' defense, wherein:

> "unclean hands really just means that in equity as in law the plaintiff's fault, like the defendant's, is relevant to the question of what if any remedy the plaintiff is entitled to. An obviously sensible application of this principle is *to withhold an equitable remedy that would encourage or reward illegal activity*."

*Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir. 1985). As a result, and when applied in a trademark context, the result is identical:

> "It is well settled that if a person wishes his trade-mark property to be protected by a court of equity, he must come into court with clean hands, *and if it appears that the trade-mark for which he seeks protection is itself a misrepresentation to the public*, and has acquired a value with the public by fraudulent misrepresentations in advertisements, *all relief will be denied to him*."

*Worden v. California Fig Syrup Co.,* 187 U.S. 516 (1903) (emphasis added).

Although not the most popular subject of legal opinions (presumably as those who have fraudulently acquired trademark rights may be wary of enforcing them), Courts across the country follow the same rule when assessing the merits of a plaintiff's assertion of trademark rights when those rights were acquired based on a violation of U.S. law. *See e.g.; Desert Beauty, Inc. v. Mara Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (unlawful use defense has origins in common law doctrine of unclean hands and prevents the government from having to extend the benefits of trademark protection to a seller who violates that government's laws)*; Havana Club Holding, S.A. v. Galleon, S.A.,* 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998) (the availability of injunctive relief is affected "when a plaintiff attempts to enforce a right acquired through inequitable conduct"); *Erva Pharmaceuticals, Inc. v. American Cynamid Company*, 755 F. Supp. 36, (D.P.R. 1991) (to assert trademark rights, the prior use that the trademark is based upon must have been lawful); *see also* J.Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19.124 (West, 2010 Ed.) (addressing history of the unclean hands – unlawful use defense).

In fact, in a case factually similar to the present, *GoClear LLC v. Target Corporation*, the Court found a product bearing the trademark CLEAR X, advertised as a non-chemical acne solution, was actually a "drug" within meaning of FDCA which may not be introduced in interstate commerce unless approved under 21 U.S.C. § 355.  *See GoClear LLC v. Target Corp.*, 2009 U.S. Dist. LEXIS 6649, at *11-13 (N.D.Cal. Jan. 22, 2009).  In *GoClear,* the Court found Target's effort to claim prior rights in the CLEAR X mark (through a predecessor) from use in commerce dating back to 2004, was insufficient because that use was not "lawful use" and in violation of the FDCA since Target never obtained approval by the federal government to market such "drug."  *Id.*  Appropriately, the Court upheld the unlawful use defense and prohibited the trademark "owner" from asserting rights in the mark against the alleged infringer.

Similar facts are applicable here.  Plaintiff secured its Alleged Rights through illegitimate means.  If even half the facts in the federal government's Indictment against Kelly Dean Harvey are correct, it is clear that any such use of the STIFF NIGHTS mark was in violation of one or more FDA labeling laws.

Plaintiff averred it was lawfully using the STIFF NIGHTS mark to secure its Federal Registration.  The declaration submitted by Plaintiff's President, "Erb Avore," attested to the fact that the mark STIFF NIGHTS was used in commerce [legally] at least as early as November 1, 2007 for "male sexual stimulant; herbal supplement."  *See* "E."  Plaintiff's averments to the USPTO were false.

The USPTO accepted these false representations without question and ultimately registered the Trademark on May 19, 2009.  Plaintiff did not reveal to the USPTO that "use in commerce" was based on the unlawful use of a controlled substance/illegal drug  that was in

-8-

violation of multiple Federal Laws, including the FDCA.  Under USPTO guidelines, it was not required to investigate the content of the stimulant, but if it knew, the Application would have been denied.[5]  Had the USPTO been aware of this illegal use, the registration would never have issued.

Plaintiff's unlawful use of the STIFF NIGHTS mark from day one invalidates any rights it might have had to the mark.  Plaintiff's Federal Registration is certainly subject to cancellation[6] and any common law rights claimed in the mark must be washed away as trademark rights may only be acquired by use in commerce – lawful use in commerce.  Likewise, any trade dress or copyright claims that included or were based on the illegal use of this alleged mark also fail.

Without valid rights, the Complaint fails to establish any rights which would be subject to protection.  Without rights to protect, the Complaint fails to establish a valid claim  on which relief could be granted, and so therefore, should be dismissed.

## 2.    Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark

Notwithstanding that Plaintiff has never legally used its trademarks and trade dress in commerce, its activity beginning in June 2010 makes it clear that Plaintiff abandoned any and all use of its mark.  A registered trademark may be considered abandoned if its "use has been discontinued with intent not to resume such use."  *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000), *citing* 15 U.S.C. § 1127.

---

[5] "Generally, the USPTO presumes that an applicant's use of the mark in commerce is lawful and does not inquire whether such use is lawful unless the record or other evidence shows a clear violation of law, such as the sale or transportation of controlled substance.  *See* Trademark Manual of Examining Procedure § 907 (8th Ed. 2011) (specifically noting that violations of 21 U.S.C. § 801-971, the Controlled Substances Act does not constitute lawful use in commerce permitting registration).

[6] Pursuant to 15 U.S.C. § 1119, a federal District Court may "determine the right to registration [and] order the cancellation of registrations".  If Top5 and Mr. Blake's motion is not granted and it is forced to proceed with this litigation, Defendant Top5 and Mr. Blake will counterclaim for cancellation of the STIFF NIGHTS trademark.

Plaintiff admits it has not used the alleged STIFF NIGHTS trademark in commerce on any goods for nearly two years. (Compl., ¶ 122). Plaintiff further admits it has not manufactured or distributed any products since that time. (Compl., ¶ 122). The Complaint contains no allegations that Plaintiff sought or is seeking a new manufacturer or reformulation for its product. The Complaint contains no allegation that Plaintiff attempted or is attempting to bring any legitimate product to the market. Instead, the Complaint makes it clear that Plaintiff just stopped all production and allowed nearly two years to pass before filing a lawsuit based on ill-gotten Alleged Rights.

The Complaint and Plaintiff's lack of conduct indicate an intent to abandon the STIFF NIGHTS trademark. Plaintiff's lack of conduct also demonstrates that Plaintiff had little interest in making <u>legitimate</u> use of the mark over the last two years or in doing so going forward. Plaintiff and its manufacturer are under criminal investigation concerning the illegal sale of its products. There simply is nothing to establish that Plaintiff has or will have the ability to resume (or better put, initiate) legal use of its mark. To the extent Plaintiff established any legitimate trademark rights, which it has not, those rights have expired and are not likely to resume. Plaintiff's claims surrounding those rights should therefore be dismissed.

### 3.    The STIFF NIGHTS Mark Is Not Famous

Plaintiff reaches in Count VI to the Complaint by claiming the STIFF NIGHTS mark and trade dress have become "famous" as a result of Plaintiff's continuous use of the name and trade dress in connection with the sale of its goods. Under a claim for Federal Trademark Dilution, a mark that is allegedly being diluted must be "famous," meaning that is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). To be considered famous, "a mark must be truly prominent and renowned." *Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, *23-24 (E.D. Mich.

July 26, 2011) (internal citations omitted).  STIFF NIGHTS is <u>not</u> a truly renowned mark such as NIKE, MCDONALDS or COCA COLA.[7]   Plaintiff's claims related to dilution must be dismissed.

**B.**     **Plaintiff's Complaint is devoid of any Allegation or Evidence that it Purchased Counterfeit Product from Top5 or Mr. King**

Plaintiff's Complaint is devoid of any allegation or evidence that it purchased any allegedly counterfeit product from Top5 or Mr. King.  The sole and entire basis for Plaintiff's claims against Top5 and Mr. King relies on a printout from the website www.top5supps.com, which it entitles "evidence of counterfeit sales by Blake King dba www.top5supps.com". (Exhibit "21" to the Complaint, attached hereto as Exhibit "F").  Notably and unlike other defendants in this action, Plaintiff does not attach an invoice for the purchase of product from Top5 or Mr. King.  Based upon this fact alone, the Complaint should be dismissed.

**C.**     **This Court Lacks Jurisdiction Over Mr. Blake King**

Mr. Blake King ("Mr. King") has been individually named as a Defendant in this lawsuit.  Plaintiff's sole allegations against Mr. King are:

Defendant Blake King (hereafter "King"), is an individual residing in New York, and upon information and belief, resides at 319 Lafayette Street, Apartment 179, New York, NY 10012.

Upon information and belief, King is the owner and proprietor of an online Internet company doing business in this judicial district under the name www.top5supps.com (hereafter "Top5"), located at 319 Lafayette St., Unit 179, New York, N.Y.

(Complaint, ¶¶ 32, 33.)  As stated in the supporting Declaration attached hereto as Exhibit "B," Mr. King is a member of BL Supplements, LLC ("BL"), which is the current registrar of the domain and operator of the domain Top5.  Mr. King has no contacts with the

---

[7] To the extent any erectile dysfunction treatment is famous, Top5 and Mr. Blake submit such fame likely rests with a mark for a valid medication such as VIAGRA®, and not Plaintiff's illegal "dietary supplement."

State of Michigan that would give Plaintiff a basis to assert personal jurisdiction against him in this lawsuit.  (Mr. King Declaration)

### 1.   Standard for Lack of Personal Jurisdiction

Mr. King should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure require that a pleading that states a claim for relief contain "a short and plain statement of the grounds for the court's jurisdiction...." Fed.R.Civ.P. 8(a)(1). A defendant may be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2), even without an evidentiary hearing, where the pleadings and Declarations fail to demonstrate a prima facie showing of jurisdiction. *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262 (1996).

Personal jurisdiction over a defendant in a federal question case "exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (internal quotation omitted).  Michigan's long-arm statute is coterminous with the reach of due process, making the two inquiries one and the same. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992).

### 2.   Michigan's Long-Arm Statute

Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.705. M.C.L. § 600.705(1) provides for limited jurisdiction when an defendant engages in "the transaction of any business within the state."

The rule in this Circuit is that while "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, ... where an out-

of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.,* whether [ ]he purposefully availed [him]self of the forum and the reasonable foreseeable consequences of that availment." *Id.* at 698 (citations omitted).

### 3.    Due Process

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Air Prods. & Controls, Inc. v. Safetech Int'l Inc.,* 503 F.3d 544, 549 (6th Cir.2007) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In this analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The emphasis of this inquiry, in turn, "is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 479 (6th Cir.2003) (quotation omitted). Ultimately, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). And where jurisdiction is to be asserted over an individual officer of a corporation, jurisdiction "cannot be predicated merely upon jurisdiction over the corporation;" it must instead "depend on traditional notions of fair play and substantial justice; i.e., whether [ the officer] purposely availed [ himself] of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F. 3d 683, 698 (6th Cir. 2000) (quotation omitted). The Sixth Circuit held that a

defendant, who has acted within his official capacity, must be "actively and personally" involved, and even in that instance, personal jurisdiction is still subject to the notions of fair play and substantial justice. *Id.*

The Complaint is devoid of allegations that Mr. King had any role, much less that he was "actively and personally" involved in the activities giving rise to the Third Amended Complaint. *North Point Dealings, Inc. v. Argo International, Inc.*, 2007 WL 1976558 (E.D. Mich 2007) (dismissing individual where there was no purposeful availment by individual by virtue of one communication as the contact person on the company's website due to lack of "active and personal" involvement). In fact, the only allegations against Mr. King are in paragraphs 32 and 33 of the Complaint:

Defendant Blake King (hereafter "King"), is an individual residing in New York, and upon information and belief, resides at 319 Lafayette Street, Apartment 179, New York, NY 10012.

Upon information and belief, King is the owner and proprietor of an online Internet company doing business in this judicial district under the name www.top5supps.com (hereafter "Top5"), located at 319 Lafayette St., Unit 179, New York, N.Y.

The one and only allegation regarding personal jurisdiction lumps all defendants together and states: "This Court has personal jurisdiction over the Defendants because they are formed under the laws of the state of Michigan, maintain a personal place of business within this judicial district, or conduct business within this judicial district." (Complaint, ¶99). None of these are even factually correct as to Mr. King. Mr. King is a resident of Tennessee; no company that Mr. King owns or operates is formed under the laws of the state of Michigan; Mr. King does not maintain a personal place of business in Michigan; and Mr. King does not conduct business in Michigan. (Mr. King Declaration, ¶¶ 2, 6).

These specious allegations are insufficient to justify the exercise of personal jurisdiction over Mr. King. Mr. King is a resident of the state of Tennessee. (Mr. King

Declaration, ¶4).  Mr. King has never been to the state of Michigan, except, possibly to change planes or during a layover.  (Mr. King Declaration, ¶4).  Mr. King does not own any property in the state of Michigan.  (Mr. King Declaration, ¶4).  Any recent contact that Mr. King has had with the state of Michigan has been solely through business conducted by BL, the company that owns and operates the domain name top5supps.com.  (Mr. King Declaration, ¶¶2, 5).  Mr. King erroneously registered the domain name in his own name, instead of the company BL, which owns and operates the domain name.  (Mr. King Declaration, ¶3).  As soon as Mr. King realized the mistake, he corrected the registration.  (Mr. King Declaration, ¶3).

Thus, it would appear that Plaintiff attempts to justify the exercise of jurisdiction over Mr. King are based solely on the fact that the top5supps.com domain name initially mistakenly listed Mr. King as the owner.  Mr. King is a member of BL, which owns and operates the top5supps.com domain name.  (Mr. King Declaration, ¶2).  Personal jurisdiction over an individual officer of a corporation, however, cannot be predicated on such grounds.  *Flagstar Bank, FSB v. Centerpointe Financial Inc.*, 2011 WL 2111984 (E.D. Mich. 2011) (dismissing individuals for lack of personal jurisdiction where only allegations were that the president and vice president signed the loan documents, on behalf of the company); *Joyner v. Mers*, 2010 WL 3419468 (E.D. Mich 2010), *affirmed* 451 Fed.Appx. 505 (6th Cir. 2011) (dismissing individual CFO for lack of personal jurisdiction where there was no evidence that CFO was directly involved in account or otherwise availed himself of the forum state); *see also International Bancorp, LLC v. Societe des Baines de mer et du cercle des Etrangers a Monaco*, 192 F. Supp. 2d 467, 476 (E.D. Va. 2002) (personal jurisdiction against individual cannot be established solely based upon registration of domain name).  Nowhere in the Third Amended Complaint are there allegations or evidence that Mr. King was directly involved with the sale of STIFF

NIGHTS or otherwise purposefully availed himself of this forum.

In a factually analogous case, *Hi-Tech Pharmaceuticals, Inc. v. Demelo*, Civil Action No. 1:07-CV-1934-RWS (N.D. GA March 31, 2009),[8] the individual defendant, Smutek moved to dismiss the complaint for Lanham Act violations against him personally for lack of sufficient minimum contacts to exercise personal jurisdiction against him.  Mr. Smutek was a resident and citizen of New York and the owner of Online Coral Calcium, Inc. ("Online Coral").  Mr. Smutek owned no property in Georgia and had no recent business dealings with Georgia other than through business conducted through Online Coral.  The domain name involved in the case was, like in this case, registered in the name of Mr. Smutek.  Plaintiff argued that Mr. Smutek's contacts through his company were sufficient to exercise jurisdiction over Mr. Smutek personally, relying on 2 emails wherein Mr. Smutek referred to himself rather than his company, Online Coral.  The Court disagreed and dismissed the case as to Mr. Smutek due to his lack of minimum contacts with the state of Georgia.  Likewise, Mr. Blake, a Tennessee resident and member of BL, lacks sufficient minimum contacts with the state of Michigan to exercise personal jurisdiction over him.  His initial registration of the domain name, owned and operated by BL, is insufficient to support a finding of personal jurisdiction over Mr. Blake.  Pursuant to the traditional notions of fair play and substantial justice, the Court should grant Mr. King's motion to dismiss for lack of personal jurisdiction.

> **4.     Even if the Complaint were Amended to name BL as a Defendant, any effort to Pierce the Corporate Veil would be unavailing**

Despite corporate ownership and control of the allegedly infringing website, Plaintiff has not named BL as a defendant in this action, but instead is proceeding against Mr.

---

[8]        A copy of the *Hi-Tech* Order is attached hereto as Exhibit "G."

King individually.   But even if the Complaint were so amended, any effort to pierce the corporate veil of BL to establish personal jurisdiction over Mr. King would be unavailing.

BL is a limited liability company registered in Las Vegas, Nevada.   (BL Declaration, ¶2, attached hereto as Exhibit "A").   It maintains no business operations or activities in Michigan, has never been authorized to transact business in Michigan, and has never maintained offices, branch offices, sales persons, or employees within Michigan.   (BL Declaration, ¶3).   BL has never advertised within Michigan, nor has been required to pay any taxes in Michigan.   (BL Declaration, ¶4).   BL does not manufacture any of the products that distributes, nor does it re-brand or represent that it is the source or producer of any of the products that distributes.   BL merely purchases products for subsequent resale to its customers. (BL Declaration, ¶5).

Pursuant to Michigan law, "there is a presumption that the corporate form will be respected." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.,* 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti,* 449 Mich. 542, 547, 537 N.W.2d 221 (1995)).   In accordance with this presumption, the Sixth Circuit has stated that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Valance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir. 1974)).   Thus, in the absence of sufficient minimum contacts with Michigan to establish jurisdiction, personal jurisdiction over a corporate officer may be established by "piercing the corporate veil" of the corporate entity over whom personal jurisdiction is proper if such entity has been used as the corporate officer's alter ego. *Estate of Thomson v. Toyota Motor Corp. Worldwide,* 545 F.2d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 653 (5th Cir. 2002)).

-17-

Regarding this analysis, "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics,* 475 F.3d at 798 (citing *Foodland Distribs. v. Al-Naimi,* 220 Mich.App. 453, 559 N.W. 2d 379, 381 (1996)). "Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir. 1988) (citations omitted). BL does not meet any of these factors, nor has Plaintiff alleged as such. Thus, any argument by Plaintiff to pierce the corporate veil of BL to establish personal jurisdiction over Mr. King should be rejected.

## IV.     CONCLUSION

Plaintiff's Complaint must be dismissed as to Top5 and King because Plaintiff has no rights on which to base its claims. The Complaint therefore fails to plead all materials elements to necessary to establish its claims contained therein. Moreover, this Court lacks personal jurisdiction over King and, for that reason too, dismissal is proper.

Respectfully submitted,


s/James D. VandeWyngearde
JAMES D. VANDEWYNGEARDE (P58634)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI  48075-1505
248.359.7387 - Direct
248.359.7700 - Fax
vandewyj@pepperlaw.com

M. KELLY TILLERY (PA BAR # 30380)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4401 - Main
215.981.4740 – Fax
tilleryk@pepperlaw.com

ERICA W. STUMP*
ERICA W. STUMP, P.A.
110 East Broward Blvd, Suite 1700
Fort Lauderdale, FL 33301
786.506.1088
erica@ericawstump.com
* Application for Admittance to be filed

*Counsel for Defendants*
*Blake King and Top5supps.com*

Date:  April 26, 2012
#16014497 v1 (139254.2)

-19-