JAMES D. VANDEWYNGEARDE (P58634)
**PEPPER HAMILTON LLP**
Suite 1800
4000 Town Center
Southfield, MI 48075-1505
248.359.7300 - Main
248.359.7387 - Direct
248.359.7700 - Fax
vandewyj@pepperlaw.com

M. KELLY TILLERY (PA BAR # 30380)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
215.981.4401 - Main
215.981.4740 – Fax
tilleryk@pepperlaw.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IMPULSARIA, LLC,<br>a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNITED DISTRIBUTION GROUP, LLC,<br>*et al.*,<br><br>Defendants. | CASE NO. 11-cv-1220-RHB<br>Hon. Robert Holmes Bell<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT SLK DISTRIBUTORS, LLC TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND FORUM *NON CONVENIENS* GROUNDS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.  BACKGROUND .................................................................................................... 1

    A.    SLK Has No Connection to the State of Michigan ................................. 1

    B.    Plaintiff's Complaint Against SLK ...................................................... 2

    C.    Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims ................... 3

II.  ARGUMENT ...................................................................................................... 5

    A.    SLK Is *Not* Subject to the Personal Jurisdiction of this Court ................................ 5

            1.    SLK is Not Subject the General Jurisdiction of this Court ........................ 7

            2.    SLK is Not Subject to the Specific Jurisdiction of this Court ................... 8

    B.    Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights ............... 9

            1.    Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights ............................................. 11

            2.    Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark ............... 15

            3.    The STIFF NIGHTS Mark Is Not Famous ............................................... 16

    C.    This Court is Not the Proper Forum to Hear this Matter ..................................... 17

            1.    An Alternative Forum Exists in Georgia .................................................. 18

            2.    The Public and Private Interests Factors Weigh in Favor of Dismissal ............... 18

III.  CONCLUSION ................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                     **<u>Page(s)</u>**

*Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) ..................................................................................................................6

*Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 359 (6th Cir. 1998)............11

*Amway Corporation v. Kope Food Products, Inc.*, 840 F. Supp. 78, 80 (W.D. Mich. 1993) ...............................................................................................................6, 9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) .............................................10

*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874-75 (9th Cir. 1999) ...................................16

*Bar's Products, Inc. v. Bar's Products International, Ltd, et al*, 2011 U.S. Dist. LEXIS 111502, at *15 (E.D. Mich. Sept. 29, 2011) .................................................................6, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).............................................................................................................10

*Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260 (5th Cir. 1975).........................................11

*Burger King v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) .............8

*Coach Services, Inc. v. Triumph Learning, LLC* 668 F.3d 1356, 1374-75 (Fed. Cir. 2012) .......................................................................16, 17

*Desert Beauty, Inc. v. Mara Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007)..............................12

*Erva Pharmaceuticals, Inc. v. American Cynamid Company*, 755 F. Supp. 36 (D.P.R. 1991) ......................................................................................................................13

*Flagstar Bank, F.S.B. v. Freestar Bank, N.A.* 2008 U.S. Dist. LEXIS 78602, at *6 (E.D. Mich. Oct. 7, 2008) ....................................................................................................6, 7, 8

*GoClear LLC v. Target Corp.*, 2009 U.S. Dist. LEXIS 6649, at *11-13 (N.D.Cal. Jan. 22, 2009) ...............................................................................................................13

*Greagri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007)................11, 12

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)..............18

*Havana Club Holding, S.A. v. Galleon, S.A.*, 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998) ...............................................................................................12

**Page(s)**

*Heliocopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15, 80 L. Ed 2d 404, 104 S. Ct. 1868.................................................................................................6

*Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 579 F.3d 603, 609 (6th Cir. 2009).............10

*Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008).....................................................................................................9, 10

*I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir. 1998).........................................16

*Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, *23-24 (E.D. Mich. July 26, 2011) ........................................................................16

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)..........................................................................................................6

*Kerry Steel v. Paragon Industries, Inc.*, 106 F.3d 147, 148-49 (6th Cir. 1997) ....................6, 7, 8

*Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986)...................................18

*On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000)...............15

*Petter Invs., Inc. v. Hydro Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 126908, *7 (W.D. Mich. Nov. 2, 2011) .................................................................................................10

*Prestige Pet Products, Inc. v. Pingyang Hauxing Leather & Plastic. Co., Ltd.*, 767 F. Supp. 2d 806, 808 (E.D. Mich. 2011) ...........................................................................10

*Research in Motion, Ltd. v. Defining Presence Marketing Group, Inc, et al*, 2012 U.S. Dist. LEXIS 45, at *32, 102 U.S.P.Q.2d 1187 (TTAB Feb. 27, 2012) ....................16

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)....................................10

*Self-Insurance Institute of America, Inc. v. Software and Information Industry Ass.*, 208 F. Supp. 2d 1058, 1077 (C.D. Cal. 2000) ...............................................................16

*Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) ........................................................12

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)................8

*In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48 (TTAB 1968)...............................................................11

*Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989)...............................................17

*Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009)...................................10

*Top Tobacco, L.P. v. North Atl. Operating Co.*, 509 F.3d 380, 384 (7th Cir. 2007)....................17

<u>**Page(s)**</u>

*Viron International Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002) ...................................................................................................................18

*Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903) ...........................................12

## <u>S</u><small>TATUTES</small>

*15 U.S.C. § 1051* ...........................................................................................................11

*15 U.S.C. § 1119* ...........................................................................................................14

*15 U.S.C. § 1125(c)(2)(A)* .............................................................................................16

*15 U.S.C. § 1127* ...........................................................................................................15

*18 U.S.C. § 371* ...............................................................................................................4

*18 U.S.C. § 1341* .............................................................................................................4

*18 U.S.C. § 1343* .............................................................................................................4

*18 U.S.C. § 1956(a)(1)(B)(i)* ...........................................................................................4

*18 U.S.C. § 1957* .............................................................................................................4

*21 U.S.C. § 321* ...............................................................................................................4

*21 U.S.C. § 355* .............................................................................................................13

*21 U.S.C. § 801-971* ......................................................................................................14

## <u>O</u><small>THER</small> <u>A</u><small>UTHORITIES</small>

Fed. R. Civ. P. 12(b)(2) .................................................................................................1, 5

Fed. R. Civ. P. § 12(b)(6) .................................................................................................9

Trademark Manual of Examining Procedure, § 907 (8th Ed. 2011) ...............................14

J.Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19.124 (West, 2010 Ed.) .......................................................................................................................13

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND FORUM *NON CONVENIENS*

Defendant, SLK Distributors, LLC ("SLK"), by and through its undersigned counsel, pursuant to the Federal Rules of Civil Procedure and on Forum *non conveniens* grounds, hereby Moves to Dismiss Plaintiff, Impulsaria, LLC's ("Impulsaria" or "Plaintiff") Third Amended Complaint ("Complaint"), originally filed on January 19, 2012, as to Defendant, SLK.

SLK respectfully submits this Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court has no personal jurisdiction over SLK. SLK is a Georgia limited liability company with no contacts or connection to the State of Michigan such that would permit this Court to exercise personal jurisdiction over SLK.

SLK also submits this Complaint should be dismissed because Plaintiff has no rights on which to base any of its claims. Plaintiff's alleged rights are based solely on illegal activity and are not subject to protection. Even if such rights ever existed, Plaintiff admits to abandoning them. Absent any protectable rights, Plaintiff cannot establish any claim on which any relief could be granted against any defendant, including SLK.

Finally, the Complaint should also be dismissed on Forum *non conveniens* grounds given that the likely location of relevant facts and witnesses reside outside of Michigan and that Plaintiff approached this Court with unclean hands.

## I.   BACKGROUND

### A.   SLK Has No Connection to the State of Michigan

SLK is a Georgia limited liability company, whose sole place of business is located in Eatonton, Georgia. *See* Exhibit "A," Declaration of Steven L. Kent. SLK has never registered to do business in Michigan. *See* Ex. A. Nor has SLK ever conducted any business in or shipped any products into Michigan. *See* Ex. A. SLK has never maintained any real property

or bank accounts in Michigan. *See* Ex. A. SLK has never maintained an address or phone number in Michigan. *See* Ex. A. Nor has SLK ever had any employees or offices or maintained any equipment in Michigan. *See* Ex. A. SLK has never paid taxes to the State of Michigan and has never been involved in a litigation or legal proceeding in the State of Michigan, aside from this presnt litigation. *See* Ex. A.

### B.    Plaintiff's Complaint Against SLK

On its face, Plaintiff's Complaint appears to outline garden-variety trademark infringement and counterfeiting claims.   In such a case, a plaintiff, a purveyor of lawful goods and owner of a Federal Trademark Registration for these goods, files a lawsuit against defendants who are allegedly copying the trademark or offering inferior products under the mark, and are illegally profiting off of the goodwill the plaintiff has established in its mark. Plaintiff's Complaint purports to lay out this type of claim.

Plaintiff claims ownership to Federal Trademark Registration No. 3,621,660 for the mark STIFF NIGHTS for "dietary supplements," registered with the United States Patent and Trademark Office (USPTO) on May 19, 2009. (Compl., ¶ 111.).   Plaintiff claims further ownership of a distinctive trade dress incorporating the STIFF NIGHTS mark. (Compl., ¶¶ 104-05).   Plaintiff further claims copyrights in its trademark and trade dress. (Compl., ¶¶ 113-14). (Collectively, SLK refers to Plaintiff's aforesaid alleged rights as "Alleged Rights").

Plaintiff complains its Alleged Rights have been violated by numerous parties across the country, including Defendant, SLK.

Plaintiff claims SLK violated its Alleged Rights by possessing and selling unauthorized counterfeit products under the STIFF NIGHTS mark and trade dress into Michigan. (Compl., ¶¶ 75, 126)  The sole and entire basis for Plaintiff's claims against SLK relies on a an unattested to hearsay email from Clyde DeWitt, Counsel for Premiere Sales Group, Inc., to Barry

Kane, Counsel for Plaintiff (the "Email").  (Compl., ¶ 126, Ex. 32); *see* Exhibit "B," a copy of

the Email as pulled from Ex. 32.  The body of the email reads in part:

> "As noted, my client is Premiere Sales Group, Inc., a California distributor
> of thousands of products primarily to adult businesses, but throughout the
> United States.  For your information, my client has purchased the subject
> product from each of the following distributors, the most recent shipping
> date as late as the date indicated in brackets (The computer records go
> back to January of 2010):"

(*Id.*)  The Email then lists SLK as one of five distributors, along with SLK's contact information.

The Email does not identify STIFF NIGHTS products.  (*Id.*).

Plaintiff provides no other allegation or supporting affidavit to establish the

Email's reference to "the subject product" is in fact STIFF NIGHTS products.  Plaintiff also fails

to allege that if such product did exist, that it was counterfeit and was not legally obtained from

Plaintiff.[1]

Plaintiff makes no other allegations against SLK and provides no other evidence

or affidavit in support of its claims against SLK.[2]

C.    **Unlawful Activity Subverting Plaintiff's Alleged Rights and Claims**

Plaintiff conveniently withholds several key facts from the Complaint that

severely undercut any support it might have for its claims.  Plaintiff deliberately fails to mention

its Alleged Rights were and are based solely upon the sale of an illegal controlled substance in

violation of multiple Federal Statutes.   Specifically, Plaintiff omits from its papers that its

principal, "Erb Avore," is a named Unindicted Co-Conspirator (UC1), in a Federal Indictment

against <u>its own manufacturer</u> in the District of Utah <u>and</u> is currently being investigated there and

---

[1] Plaintiff also failed to offer any such evidence in support of its claims during the February 6, 2012 Show
Cause Hearing.

[2] As opposed to the other sales invoices included in Ex. 32, which indicate sales from other companies to
customers Michigan.  (Compl., Ex. 32).

in the State of Michigan for similar conduct. (*Resp. to Fourth Motion*, Dkt. 119, Exs. C and D); *see* Exhibits "C" and "D," copies of Exs. C and D. from *Response to Fourth Motion*, Dkt. 119.

In order to legally market a drug in interstate commerce, a manufacturer is required to secure approval from the Food and Drug Administration ("FDA"). Absent federal approval, a manufacturer/distributor who markets/sells a drug in interstate commerce is in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321 *et seq.* ("FDCA"). A deeper investigation of the facts underlying Plaintiff's claims reveals a plaintiff and its supplier being investigated for thirty-one (31) criminal acts all relating to the unauthorized sale of a controlled substance (STIFF NIGHTS) under the guise of a "dietary supplement" that defrauded the government and deceived the public.

On April 6, 2011, the U.S. government filed a Thirty-One Count Indictment[3] against Kelly Dean Harvey (the "Harvey Indictment"), a Utah manufacturer of a product called STIFF NIGHTS – the same STIFF NIGHTS for which Plaintiff claims rights. *See* Ex. "C." Specifically, the Harvey Indictment identified the STIFF NIGHTS product analyzed as containing sulfoaildenafil, an active ingredient in the product commonly branded VIAGRA®. *See* Ex. "C" at ¶¶ 4, 29. Kelly Dean Harvey was identified as the manufacturer, and Plaintiff's President, "Erb Avore" was identified as the Unindicted Co-Conspirator. *See* Ex. "C" at ¶ 13.

The conspiracy between Harvey and Plaintiff began at least as early as April 2007[4] and continued until June 2010, and was designed as a "scheme and artifice to fraudulently

---

[3] The 31 counts were comprised of violations of: 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering), and 18 U.S.C. § 1957 (money transaction money laundering).

[4] Note that as part of its application for registration of its alleged mark, Plaintiff declared under oath to the USPTO that use in commerce of the STIFF NIGHTS mark began on November 1, 2007. (*Resp. to Fourth Motion*, Dkt. 119, Ex. B); *see* Exhibit "E," a copy of Ex. B to *Response to Fourth Motion*, Dkt. 119. This claimed use in commerce coincides with what is identified in the Harvey Indictment as unlawful use of the STIFF NIGHTS mark.

manufacture, distribute, and market in interstate commerce a drug as a 'dietary supplement' to evade and avoid appropriate government regulation by the FDA and for financial gain." *See* Ex. "C" at ¶¶ 16, 17.  According to the Harvey Indictment, from April 2007 to June 2010, Plaintiff invested over $2 million in such erectile dysfunction products (STIFF NIGHTS products) manufactured by Kelly Dean Harvey and his companies, and sold the product via the website www.stiffnights.com as a male sexual stimulant and dietary supplement, without authorization by the FDA and falsely and fraudulently omitting the illegal active ingredient. *Id.* at ¶¶ 33, 34. That lawsuit, and another co-pending criminal indictment against Harvey and co-defendants Mahesh Kuma Bisht and Jorge Eduardo Campos are ongoing.  *See* Ex. "D" (the "Harvey Indictment 2").

Beginning in June 2010, Plaintiff abandoned all use of its alleged mark, including any manufacturing, distribution or sale of any products bearing the STIFF NIGHTS mark and trade dress. (Compl., ¶ 122).  Plaintiff has now not used its STIFF NIGHTS trademark (whether on legitimate or illegal goods) for nearly two (2) years.

## II.   ARGUMENT

SLK respectfully submits this Complaint should be dismissed because this Court has no personal jurisdiction over SLK based upon the claims outlined in the Complaint.  The Complaint should also be dismissed because Plaintiff has no legal rights on which to base its claims.  Given Plaintiff's unlawful conduct, the Complaint, and the evidence and affidavit filed in support thereof, is devoid of any legal basis on which relief against SLK may be granted. Moreover, the Complaint should be dismissed on Forum *non conveniens* grounds.

### A.   SLK Is *Not* Subject to the Personal Jurisdiction of this Court

Rule 12(b)(2) allows SLK to seek dismissal of Plaintiff's Complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  The burden of establishing personal jurisdiction

lies with the Plaintiff. *See Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Plaintiff can meet this burden by establishing with reasonable particularity that sufficient contacts exist between SLK and the State of Michigan. *See Bar's Products, Inc. v. Bar's Products International, Ltd, et al*, 2011 U.S. Dist. LEXIS 111502, at *15 (E.D. Mich. Sept. 29, 2011)

A District Court may consider a 12(b)(2) motion without the benefit of an evidentiary hearing. *See Amway Corporation v. Kope Food Products, Inc.*, 840 F. Supp. 78, 80 (W.D. Mich. 1993) (internal citations omitted). The pleadings and affidavits should be viewed in the light most favorable to the non-moving party. *See id.* However, where a properly supported motion for dismissal has been submitted, the plaintiff may not stand on his pleadings, but must set forth specific facts showing that the Court has jurisdiction. *See id.*

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel v. Paragon Industries, Inc.*, 106 F.3d 147, 148-49 (6th Cir. 1997) (internal citations omitted). The defendant must be subject to the forum state's long-arm statute, but only to the limits of the due process requirements of the Constitution. *See id.* Under due process, a federal court may not exercise personal jurisdiction over a defendant unless the exercise of that jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Flagstar Bank, F.S.B. v. Freestar Bank, N.A.* 2008 U.S. Dist. LEXIS 78602, at *6 (E.D. Mich. Oct. 7, 2008) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Jurisdiction occurs in two forms - general or specific. *See Kerry Steel*, 106 F.3d at 149 (citing *Heliocopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15, 80 L. Ed 2d 404, 104 S. Ct. 1868 & nn 8-10 (1984)). General jurisdiction requires a defendant to have

continuous and systematic contacts with the forum state. *See id.* at 149.  Specific jurisdiction is more limited, only exposing a defendant to litigation in the forum state where the claims "arise out of or relate to" the defendant's contact with the forum.  *Id.*

Here, Plaintiff makes no specific claim as to whether SLK is subject to either the Court's general jurisdiction or to its specific jurisdiction.  Instead, Plaintiff lumps SLK in with all the other defendants, and assumes SLK is somehow subject to jurisdiction in Michigan without providing any factual basis in its claims.[5]  Here, the facts clearly establish SLK is <u>not</u> subject to <u>either</u> the general <u>or</u> specific jurisdiction of this Court.

### 1.    SLK is Not Subject the General Jurisdiction of this Court

A party is subject a court's general jurisdiction where its contacts with the forum state are continuous and systematic contacts with the forum state. *See Kerry Steel, Inc.*, 106 F.3 at 149.  Tenuous contacts will not suffice. *See Flagstar Bank*, 2008 U.S. Dist. LEXIS 78602, at * 6-7.  SLK has <u>no</u> contacts with Michigan, let alone continuous and systematic, or even tenuous contacts.

SLK is a Georgia limited liability company, whose sole place of business is located in Eatonton, Georgia. *See* Ex. A.  SLK has never registered to do business in Michigan. *See* Ex. A.  Nor has SLK ever conducted any business in or shipped any products into Michigan. *See* Ex. A.  SLK has never maintained any real property or bank accounts in Michigan. *See* Ex. A.  SLK has never maintained an address or phone number in Michigan. *See* Ex. A.  Nor has SLK ever had any employees or offices or maintained any equipment in Michigan. *See* Ex. A. SLK has never paid taxes to the State of Michigan and has never been involved in a litigation or

---

[5] Plaintiff alleges SLK is subject to this Court's jurisdiction because it either was formed under the laws of the State of Michigan, maintains a principal place of business within this District, or conducts business within this District.  (Compl., ¶ 99).  Plaintiff further maintains, again without factual basis, that SLK is manufacturing, distributing or selling products within the State of Michigan. (Compl., ¶ 125).  Neither of these are true. *See* Ex. A.

legal proceeding in the State of Michigan, aside from this present litigation.  *See* Ex. A.  The Complaint fails to allege anything to the contrary.

### 2.    SLK is Not Subject to the Specific Jurisdiction of this Court

A party may be subject to the specific jurisdiction of this Court where (1) the party purposefully avails itself of acting or causing a consequence in the forum state; (2) the cause of action arises from that party's activities in the forum state, and (3) the party's acts have a substantial enough connection with this forum to make the exercise of jurisdiction over the party reasonable.  *See Kerry Steel, Inc.*, 106 F.3d at 150 (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

"Purposeful availment is the '*sin qua non* for *in personam* jurisdiction.'"  *Id.* (quoting *Mohasco*, 401 F.2d at 381-82).  A party purposefully avails itself of a forum state by acting within that state in such a manner that allows that party to invoke the benefits and protections of the laws of that forum state.  *See id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  The concept of purposeful availment provides predictability, allowing a party to conduct itself in a way which allows it to predict, with some minimum assurance, as to where its conduct will and will not subject it to suit.  *See id.* "The requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'"  *Id.* (quoting *Burger King*, 471 U.S. at 475).

Parties who have not purposefully availed themselves of acting within a forum will not be subject to that forum's jurisdiction.  *See id.* at 151; *see also Bars Prods. Inc.*, 2011 U.S. Dist. LEXIS 111502, at *18-19 (defendant not subject to jurisdiction where it has no connection to the forum state); *Flagstar Bank Inc.*, 2008 U.S. Dist. LEXIS 78602, at *7-8 (a party, with no other contacts to a forum state, will not be said to have purposefully availed itself

of that forum simply because a customer, who did not reside in the forum, subsequently made a connection with that forum state); *Amway Corp.*, 840 F. Supp. at 81.

Here, SLK has not purposefully availed itself of acting within the State of Michigan. It has no contacts with Michigan and has never conducted any business or operated in any manner to that would have allowed it to predict that its business conduct would be somehow subject to suit in this jurisdiction.

The Complaint does not establish anything to the contrary because Plaintiff has no evidence to suggest SLK has any contact with Michigan. The <u>only</u> evidence offered in support of the Complaint that even mentions SLK is the one Email from Counsel for Premiere Sales Group, Inc. to Counsel for Plaintiffs. *See* Ex. B. The State of Michigan is <u>not</u> mentioned anywhere on the Email. *See* Ex. B. The Email lacks any indication that SLK is operating a business or shipping products into Michigan. *See* Ex. B. The Email fails to even suggest SLK possessed, sold, or shipped a product bearing the mark STIFF NIGHTS. *See* Ex. B. At most, the Email suggests that SLK sold some <u>unidentified</u> product to Premiere Sales Group, Inc., a company located only in California. *See* Ex. B.

As noted above, SLK has <u>never</u> had any connection with Michigan. Plaintiff's allegations completely fail to establish any connection between SLK and this forum. To haul SLK into this jurisdiction without any factually supportable allegations or evidence to indicate SLK has any contact with this forum offends the traditional notions of fair play and substantial justice. On a jurisdictional basis alone, Plaintiff's Complaint as to SLK <u>must</u> be dismissed.

**B.**      <u>**Plaintiff's Claims Are Baseless Because Plaintiff Owns No Protectable Rights**</u>

Rule 12(b)(6) permits a district court to dismiss a complaint that fails to state a claim on which relief may be granted. Fed. R. Civ. P. § 12(b)(6); *see Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 622 F. Supp. 2d 554, 558 (E.D. Mich. 2008). The rule permits SLK

to test whether Plaintiff, as a matter of law, is entitled to any relief based on the facts alleged in its Complaint. *See Hensley Mftg., Inc.*, 622 F. Supp. 2d at 558. Plaintiff's Complaint may be dismissed if it fails to prove any claim on which it would be entitled to relief. *See id.* The complaint must contain allegations with respect to *all material elements necessary to sustain a recover under some viable legal theory. See id.* (emphasis added).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is limited to considering the allegations in the pleadings. *See Petter Invs., Inc. v. Hydro Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 126908, *7 (W.D. Mich. Nov. 2, 2011) (citing *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (emphasis added). The court is to accept the factual allegations of the plaintiff as true. *See Prestige Pet Products, Inc. v. Pingyang Hauxing Leather & Plastic. Co., Ltd.*, 767 F. Supp. 2d 806, 808 (E.D. Mich. 2011), (citing *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009)). However, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." *Id.* (internal citations removed).

Plaintiff must go beyond labels and conclusions or a mere formulaic recitation of the elements to a cause of action. *See id.,* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In other words, a technical recitation of the elements to a claim, without more, will be insufficient to nudge Plaintiff's allegations beyond mere speculation. *See id.* at 810. The factual claims must be plausible and rise above mere speculation. *See id.* at 809, (citing *Hensley Manufacturing, Inc. v. Propride, Inc., et al*, 579 F.3d 603, 609 (6th Cir. 2009).

Here, the facts, as alleged in the Complaint fail to establish the most basic of elements needed to support Plaintiff's various claims – the ownership of a valid protectable right. Because Plaintiff's Alleged Rights were unlawfully obtained, they are not recognizable by law. Plaintiff therefore does not own any protectable rights. With any rights to protect, Plaintiff cannot claim to have been injured and so the Complaint fails to outline any claim of injury that needs to be remedied by this Court.

### 1. Plaintiff's Unlawful Activity and Unclean Hands Prevent It From Establishing ANY Valid, Protectable Rights

Plaintiff's Complaint relies primarily upon its ownership of the STIFF NIGHTS federally registered trademark and the accompanying trade dress to establish its various claims of trademark infringement, trade dress infringement, and unfair competition. Plaintiff also relies on these trademark rights to establish its copyright infringement claims. Plaintiff's Alleged Rights do not exist, and have never existed, because they are based on unlawful activity.

Trademark rights in the U.S. are based upon use. *See Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 359 (6th Cir. 1998); citing *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260 (5th Cir. 1975) ("the exclusive right to a trademark belongs to one who first uses it in connection with specified goods"). One cannot claim or enforce trademark rights in a mark that it has not used and one cannot secure a U.S. Federal Trademark Registration absent "use in commerce." 15 U.S.C. § 1051 (Lanham Act – "the owner of a trademark used in commerce may request registration of its trademark on the principal register…").

That 'use in commerce,' however, must be lawful and legal use of the mark in commerce. *In re Stellar Int'l, Inc.*, 159 U.S.P.Q. 48 (TTAB 1968). "It has long been the policy of the [US]PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*." *Greagri, Inc. v. USANA Health Services, Inc.*, 474

F.3d 626, 630 (9th Cir. 2007) (adopting USPTO policy). "To hold otherwise would be to put the government in an anomalous position of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws" thereby creating bad public policy that rewards those parties who fail to comply with regulations. *Id.*

This argument is identified today as the "unlawful use defense" and is essentially an extension of the age-old 'unclean hands' defense, wherein:

> "unclean hands really just means that in equity as in law the plaintiff's fault, like the defendant's, is relevant to the question of what if any remedy the plaintiff is entitled to. An obviously sensible application of this principle is *to withhold an equitable remedy that would encourage or reward illegal activity.*"

*Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985). As a result, and when applied in a trademark context, the result is identical:

> "It is well settled that if a person wishes his trade-mark property to be protected by a court of equity, he must come into court with clean hands, *and if it appears that the trade-mark for which he seeks protection is itself a misrepresentation to the public*, and has acquired a value with the public by fraudulent misrepresentations in advertisements, *all relief will be denied to him.*"

*Worden v. California Fig Syrup Co.*, 187 U.S. 516 (1903) (emphasis added).

Although not the most popular subject of legal opinions (presumably as those who have fraudulently acquired trademark rights may be wary of enforcing them), Courts across the country follow the same rule when assessing the merits of a plaintiff's assertion of trademark rights when those rights were acquired based on a violation of U.S. law. *See e.g.; Desert Beauty, Inc. v. Mara Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007) (unlawful use defense has origins in common law doctrine of unclean hands and prevents the government from having to extend the benefits of trademark protection to a seller who violates that government's laws)*; Havana Club Holding, S.A. v. Galleon, S.A.*, 1998 U.S. Dist. *LEXIS* 4065, at *19 (S.D.N.Y. Mar. 31, 1998)

(the availability of injunctive relief is affected "when a plaintiff attempts to enforce a right acquired through inequitable conduct"); *Erva Pharmaceuticals, Inc. v. American Cynamid Company*, 755 F. Supp. 36, (D.P.R. 1991) (to assert trademark rights, the prior use that the trademark is based upon must have been lawful); *see also* J.Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19.124 (West, 2010 Ed.) (addressing history of the unclean hands – unlawful use defense).

In fact, in a case factually similar to the present, *GoClear LLC v. Target Corporation*, the Court found a product bearing the trademark CLEAR X, advertised as a non-chemical acne solution, was actually a "drug" within meaning of FDCA which may not be introduced in interstate commerce unless approved under 21 U.S.C. § 355. *See GoClear LLC v. Target Corp.*, 2009 U.S. Dist. LEXIS 6649, at *11-13 (N.D.Cal. Jan. 22, 2009). In *GoClear,* the Court found Target's effort to claim prior rights in the CLEAR X mark (through a predecessor) from use in commerce dating back to 2004, was insufficient because that use was not "lawful use" and in violation of the FDCA since Target never obtained approval by the federal government to market such "drug." *Id.* Appropriately, the Court upheld the unlawful use defense and prohibited the trademark "owner" from asserting rights in the mark against the alleged infringer.

Similar facts are applicable here. Plaintiff secured its Alleged Rights through illegitimate means. If even half the facts in the federal government's Indictment against Kelly Dean Harvey are correct, it is clear that any such use of the STIFF NIGHTS mark was in violation of one or more FDA labeling laws.

Plaintiff averred it was lawfully using the STIFF NIGHTS mark to secure its Federal Registration. The declaration submitted by Plaintiff's President, "Erb Avore," attested to

the fact that the mark STIFF NIGHTS was used in commerce [legally] at least as early as November 1, 2007 for "male sexual stimulant; herbal supplement." *See* Ex. E. Plaintiff's averments to the USPTO were false.

The USPTO accepted these false representations without question and ultimately registered the Trademark on May 19, 2009. Plaintiff did not reveal to the USPTO that "use in commerce" was based on the unlawful use of a controlled substance/illegal drug that was in violation of multiple Federal Laws, including the FDCA. Under USPTO guidelines, it was not required to investigate the content of the stimulant, but if it knew, the Application would have been denied.[6] Had the USPTO been aware of this illegal use, the registration would never have issued.

Plaintiff's unlawful use of the STIFF NIGHTS mark from day one invalidates any rights it might have had to the mark. Plaintiff's Federal Registration is certainly subject to cancellation[7] and any common law rights claimed in the mark must be washed away as trademark rights may only be acquired by use in commerce – lawful use in commerce. Likewise, any trade dress or copyright claims that included or were based on the illegal use of this alleged mark also fail.

Without valid rights, the Complaint fails to establish any rights which would be subject to protection. Without rights to protect, the Complaint fails to establish a valid claim on which relief could be granted, and so therefore, should be dismissed.

---

[6] "Generally, the USPTO presumes that an applicant's use of the mark in commerce is lawful and does not inquire whether such use is lawful unless the record or other evidence shows a clear violation of law, such as the sale or transportation of controlled substance. *See* Trademark Manual of Examining Procedure § 907 (8th Ed. 2011) (specifically noting that violations of 21 U.S.C. § 801-971, the Controlled Substances Act does not constitute lawful use in commerce permitting registration).

[7] Pursuant to 15 U.S.C. § 1119, a federal District Court may "determine the right to registration [and] order the cancellation of registrations". If SLK's motion is not granted and it is forced to proceed with this litigation, Defendant SLK will counterclaim for cancellation of the STIFF NIGHTS trademark.

### 2.    Plaintiff Affirmatively Abandoned the STIFF NIGHTS Mark

Notwithstanding that Plaintiff has never legally used its trademarks and trade dress in commerce, its activity beginning in June 2010 makes it clear that Plaintiff abandoned any and all use of its mark. A registered trademark may be considered abandoned if its "use has been discontinued with intent not to resume such use." *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000), *citing* 15 U.S.C. § 1127.

Plaintiff admits it has not used the alleged STIFF NIGHTS trademark in commerce on any goods for nearly two years. (Compl., ¶ 122). Plaintiff further admits it has not manufactured or distributed any products since that time. (Compl., ¶ 122). The Complaint contains no allegations that Plaintiff sought or is seeking a new manufacturer or reformulation for its product. The Complaint contains no allegation that Plaintiff attempted or is attempting to bring any legitimate product to the market. Instead, the Complaint makes it clear that Plaintiff just stopped all production and allowed nearly two years to pass before filing a lawsuit based on ill-gotten Alleged Rights.

The Complaint and Plaintiff's lack of conduct indicate an intent to abandon the STIFF NIGHTS trademark. Plaintiff's lack of conduct also demonstrates that Plaintiff had little interest in making legitimate use of the mark over the last two years or in doing so going forward. Plaintiff and its manufacturer are under criminal investigation concerning the illegal sale of its products. There simply is nothing to establish that Plaintiff has or will have the ability to resume (or better put, initiate) legal use of its mark. To the extent Plaintiff established any legitimate trademark rights, which it has not, those rights have expired and are not likely to resume. Plaintiff's claims surrounding those rights should therefore be dismissed.

3.    **The STIFF NIGHTS Mark Is Not Famous**

Plaintiff reaches in Count VI to the Complaint by claiming the STIFF NIGHTS mark and trade dress have become "famous" as a result of Plaintiff's continuous use of the name and trade dress in connection with the sale of its goods.  Under a claim for Federal Trademark Dilution, a mark that is allegedly being diluted must be "famous," meaning that is "widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A). To be considered famous, "a mark must be truly prominent and renowned."  *See e.g., Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 2011 U.S. Dist. LEXIS 81375, *23-24 (E.D. Mich. July 26, 2011) (internal citations omitted); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874-75 (9th Cir. 1999) (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir. 1998)) (dilution claim "invented and reserved for a select class of marks" which are "truly renowned and prominent."); *Self-Insurance Institute of America, Inc. v. Software and Information Industry Ass.*, 208 F. Supp. 2d 1058, 1077 (C.D. Cal. 2000) ("unless a mark rises to the level of 'KODAK' or 'COKE,' it is no considered famous and thus not afforded protection from dilution.").

Plaintiff essentially presumes it meets this burden by alleging modest sales of products, modest advertising at trade shows and in trade journals, and through continuing use for over five years.[8]  These allegations are wholly insufficient to establish Plaintiff's mark as famous. *See Coach Services, Inc. v. Triumph Learning, LLC*, 668 F.3d 1356, 1374-75 (Fed. Cir. 2012); *compare Research in Motion, Ltd. v. Defining Presence Marketing Group, Inc, et al*, 2012 U.S. Dist. LEXIS 45, at *32, 102 U.S.P.Q.2d 1187, (TTAB Feb. 27, 2012) (finding BLACKBERRY famous based upon "the ground breaking role of this devise in shaping the

---

[8] As mentioned above, Plaintiff admits to stopping use of its alleged mark beginning in June 2010. This is insufficient to establish continuous use for five consecutive years.

-16-

culture and technology o the early twenty-first century, the incredible volume of sales, opposer's extensive promotional and advertising expenditures in the United States, and evidence of widespread media attention.").

At most, the Complaint alleges that Plaintiff's mark has achieved a small measure of recognition with a small niche of purchasers of male sexual herbal stimulants. (Dkt. 84, ¶ 116). However, the recognition of a mark can no longer be limited to a small niche and still qualify as a "famous" mark. *See Coach Serv. Inc.*, 668 F.3d at 1372 (citing *Top Tobacco, L.P. v. North Atl. Operating Co.*, 509 F.3d 380, 384 (7th Cir. 2007)).

Plaintiff 's Complaint is devoid of allegations to establish that its mark or trade dress are "widely recognized by the general consuming public." No facts exist to support such allegations.   STIFF NIGHTS is simply <u>not</u> a truly renowned mark such as NIKE, MCDONALDS, KODAK, or COKE.[9] Plaintiff's dilution claims remain, as a matter of law, wholly insufficient and must be dismissed.

### C.   <u>This Court is Not the Proper Forum to Hear this Matter</u>

A complaint may be dismissed on Forum *non conveniens* grounds where the defendant establishes the claim can be heard in an available and adequate alternative forum, and that the balance of public and private factors merit the proceeding being conducted in that alternative forum. *See Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir. 1989).

Plaintiff's Complaint should be also be dismissed on such grounds. This Court is not the most convenient forum given the facts surrounding this proceeding and another suitable forum is readily available. Further, Plaintiff's blatant disregard for the truth in detailing its claims flies in the face of the public's interest.

---

[9] To the extent any erectile dysfunction treatment is famous, SLK submits such fame likely rests with a mark for a valid medication such as VIAGRA®, and not Plaintiff's illegal "dietary supplement."

1.      **An Alternative Forum Exists in Georgia**

Concerning the first factor, there exists a suitable and more convenient alternative forum waiting in Georgia.  SLK and its employees are located in Georgia and would all be subject to the jurisdiction of the District Court located in Georgia.  Plaintiff has alleged widespread advertising and sales across the United States, which establishes its presence in Georgia.  (Compl., ¶¶ 115, 116).  Should this Court dismiss this Complaint without prejudice, Plaintiff has every right to proceed with a claim against SLK in Georgia.

2.      **The Public and Private Interests Factors Weigh in Favor of Dismissal**

Courts of this circuit weigh a number of public and private factors in assessing a whether dismissal on Forum *non conveniens* grounds is appropriate.  These factors mimic those to be considered in a request to change venue under Rule 1404.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986).  Those factors include:

> "(1) convenience of the parties and the witnesses; (2) accessibility to sources of proof; (3) the costs of obtaining testimony of witnesses; (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interest of justice....  Other relevant factors include (1) the relative congestion of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause."

*Viron International Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002).

The first four factors support dismissing this proceeding in favor of one which could be filed in Georgia.  Plaintiff's claims are directed to SLK's alleged unlawful possession, sale and distribution of products bearing Plaintiff's alleged trademarks.  SLK is based in Georgia, and its products and the records related to those products also reside in Georgia, and not

-18-

in Michigan. *See* Ex. "A." To the extent any investigation is needed into the nature and scope of SLK's business, that inquiry will occur in Georgia, and not in Michigan. Likewise, any of SLK's employees that may have been involved in this alleged unlawful activity that may be called as potential witnesses all reside or work in Georgia, and not Michigan, and are therefore subject to personal jurisdiction in Georgia, and not necessarily in Michigan. *See* Ex. "A." It goes without saying that it would be less expensive to conduct a proceeding in Georgia, where the likely witnesses and evidence reside.[10]

The fifth factor, related to the public interest, <u>weighs heavily</u> in favor of dismissing Plaintiff's Complaint. Plaintiff deliberately misled this Court as to the nature of its Alleged Rights when it filed its Complaint. Plaintiff further concealed its involvement with a criminal investigation that goes directly to the legality of its business operations and its claims to trademark rights related to its business. Plaintiff should not be rewarded for its unlawful behavior and the cavalier approach taken in drafting its Complaint. Continuing this proceeding in Michigan only condones this egregious behavior and lends credence to a fraudulently obtained trademark and to Plaintiff's criminal activities.

Several of the remaining factors are neutral. SLK notes this Court and United States District Court in Georgia are equally qualified to hear a matter related to alleged trademark infringement, and both courts are likely equally busy. There is no relevant forum selection clause at issue between the parties, and so this factor is also neutral.

Finally, notwithstanding Plaintiff's forum choice, SLK suggests Georgia has a strong interest in ensuring its citizens (SLK) are not afoul with the law, and so would be active in

---

[10] SLK notes that given Plaintiff's president, Erb Avore, failed to appear at the Show Cause Hearing, SLK suspects Mr. Avore will likewise attempt to avoid attending additional proceedings given the ongoing criminal investigation involving Plaintiff's business.

enforcing any judgment against SLK, in the unlikely event that Plaintiff prevails on its claims. Likewise, SLK concedes this Court, and Michigan, certainly have an interest in maintaining a watchful eye over Plaintiff's activities.  However, SLK is but one of a laundry list of defendants against whom Plaintiff has raised its frivolous claims.  A dismissal of the Complaint against SLK would not prevent this Court from maintaining oversight over Plaintiff's remaining claims (or Michigan over its ongoing criminal investigation).

In balancing these factors, SLK suggests the weight of the factors clearly favor dismissal.  The Court cannot ignore Plaintiff's unclean hands and its conscious effort to mislead the Court as to the actual facts behind Plaintiff's illegal use of its STIFF NIGHTS trademark and efforts to enforce a trademark despite never legally using the trademark in commerce.  SLK's motion to dismiss on Forum *non conveniens* grounds is valid, the factors weigh in SLK's favor, and Plaintiff's Complaint should be dismissed.

## III.   CONCLUSION

Plaintiff's Complaint must be dismissed because Plaintiff has no rights on which to base its claims.  The Complaint therefore fails to plead all materials elements to necessary to establish its claims contained therein.  Even if the Complaint did meet this initial burden, which it does not, this Court is not the proper forum to hear this proceeding.  Given the location of the necessary facts and witnesses, and the complete disregard for the truth Plaintiff has demonstrated in detailing its claims, this Complaint should be dismissed.


Date:  May 22, 2012                           Respectfully submitted,


                                              s/M. Kelly Tillery
                                              JAMES D. VANDEWYNGEARDE (P58634)
                                              PEPPER HAMILTON LLP
                                              Suite 1800
                                              4000 Town Center
                                              Southfield, MI  48075-1505
                                              248.359.7300 - Main
                                              248.359.7387 - Direct
                                              248.359.7700 - Fax
                                              vandewyj@pepperlaw.com

                                              M. KELLY TILLERY (PA BAR # 30380)
                                              PEPPER HAMILTON LLP
                                              3000 Two Logan Square
                                              Eighteenth & Arch Streets
                                              Philadelphia, PA  19103-2799
                                              215.981.4401 - Main
                                              215.981.4740 – Fax
                                              tilleryk@pepperlaw.com

                                              *Counsel for Defendant*
                                              *SLK Distributors LLC*

## CERTIFICATE OF SERVICE

I, Sean P. McConnell, hereby certify that on May 22, 2012 a true and correct copy of the foregoing  Motion of SLK Distributors, LLC to Dismiss Pursuant to Fed. R. Civ. P. 12 and Forum *Non Conveniens* Grounds was served via E-mail and United States First Class Mail upon the following:

> Barry C. Kane, Esquire
> Kane & Co., PLC
> 29 Pearl St. N.W.
> 410 Federal Square Building
> Grand Rapids, MI 49503
> bkane@kaneplc.com

_____
Sean P. McConnell