UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IMPULSARIA, LLC, a Nevada
limited liability company,

        Plaintiff,

                                          File No. 1:11-CV-1220

v.

                                          HON. ROBERT HOLMES BELL

UNITED DISTRIBUTION GROUP, LLC,
et al.,

        Defendants.
_____/

**OPINION**

This matter comes before the Court on motions to dismiss filed by Defendant E&A Video and Magazine, Inc. ("E&A"), Defendants Top5supps.com ("Top5") and Blake King, and Defendant SLK Distributors, LLC ("SLK"). (Dkt. Nos. 183, 221, 240.) Defendants contend that Plaintiff's complaint should be dismissed for failure to state a claim on which relief can be granted, or, in the alternative, on grounds of *forum nonconveniens*. In addition, Defendants SLK and Blake King have moved for dismissal for lack of personal jurisdiction. For the reasons that follow, SLK's motion to dismiss for lack of personal jurisdiction will be granted, and the remaining motions will be denied.

**I.**

Plaintiff alleges in its verified third amended complaint that it is the owner of Federal Trademark Registration No. 3,621,660 for the mark STIFF NIGHTS for dietary supplements.

(Dkt. No. 84, Third Am. Compl. ¶ 111 (unless otherwise noted, all citations to the complaint will be to the Third Amended Complaint).)  Plaintiff also claims ownership of a distinctive trade dress which incorporates the STIFF NIGHTS mark and copyrighted material appearing on the STIFF NIGHTS packaging.  (Compl. ¶¶ 103, 113.)

Since November of 2007, Plaintiff has sold an herbal dietary supplement under the STIFF NIGHTS brand name.  (Compl. ¶¶ 103, 116.)  In October of 2009, the Food and Drug Administration ("FDA") contacted Plaintiff over concerns about the ingredients in the STIFF NIGHTS product.  (Compl. ¶ 119.)  In June of 2010, Plaintiff informed the FDA that the STIFF NIGHTS product that was alleged to contain a controlled substance was counterfeit product produced by third parties.  (*Id.* at ¶ 120.)  In light of the concerns raised by the FDA, in June of 2010, Plaintiff ceased distributing or authorizing the manufacture, distribution, or sale of STIFF NIGHTS dietary supplements, and in August of 2010, Plaintiff voluntarily recalled lot numbers of the STIFF NIGHTS herbal supplement produced before June of 2010.  (*Id.* at ¶¶ 121, 122.)   While Plaintiff was in the process of reintroducing the STIFF NIGHTS product back into commerce, Plaintiff learned that its former distributors and retail outlets were selling counterfeit versions of the STIFF NIGHTS product obtained from a third party that were identical in brand and trade dress to the STIFF NIGHTS product previously offered by Plaintiff.  (*Id.* at ¶ 124.)

In this action Plaintiff complains that its rights have been violated by more than fifty named defendants who have distributed unauthorized counterfeit products under the STIFF

2

NIGHTS mark and trade dress in Michigan. (Compl. ¶ 126.) Plaintiff has alleged that the counterfeit products have "a package and external image and language identical to that offered by Impulsaria;" that because of the similarity of the marks, consumers "are likely to be and actually have been deceived, mistaken, and confused as to the source of the STIFF NIGHTS;" and that these acts have damaged Plaintiff's business reputation and have diluted Plaintiff's goodwill in its trademark. (Compl. ¶¶ 127, 131.)

## II.

Defendants SLK and Blake King have moved to dismiss the claims against them pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Where, as here, the Court decides a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *see also American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (describing the burden on the plaintiff in such a case as "relatively slight"). To meet this burden, the plaintiff must establish "with reasonable particularity" sufficient contacts between Defendant and the forum state to support jurisdiction. *Neogen*, 282 F.3d at 887; *see also See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 520-21 (6th Cir. 2006) ("[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has

jurisdiction."). In evaluating the plaintiff's response to the motion to dismiss, the Court construes the facts in the light most favorable to the plaintiff and disregards contradictory evidence proffered by the defendant. *Neogen*, 282 F.3d at 887.

Personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). The due process "minimum contacts" inquiry is satisfied if the defendant meets the following criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Miller v. AXA Winterthur Ins. Co.*, No. 11-1751, — F.3d —, 2012 WL 4009693 at *3 (6th Cir. Sept. 13, 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968)). "[T]he first prong – 'purposeful availment' – is the 'sine qua non' for in personam jurisdiction." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach.*, 401 F.2d at 381-82).

Plaintiff has alleged in its complaint that the Court has personal jurisdiction over all of the Defendants "because they are formed under the laws of the State of Michigan, maintain a principal place of business within this judicial district, or conduct business within

this judicial district." (Compl. ¶ 99.) Plaintiff has further alleged, as to all the Defendants, that they are "manufacturers, importers, wholesalers, distributors of general merchandise and/or cash and carry stores selling, offering for sale, and active internet sites selling and/or distributing products within the state of Michigan." (Compl. ¶ 125.)

**A.  King**

With respect to Defendant King, Plaintiff has specifically alleged that King is the owner/operator of an online Internet company doing business in this judicial district under the name top5supps.com, (Compl. ¶¶ 32, 33.) Plaintiff has attached to the complaint a printout from the website www.top5supps.com which shows that Top5 offers STIFF NIGHTS for sale. (Dkt. No. 62, Second Am. Compl., Ex. 21.)

Defendant King contends that the Court lacks personal jurisdiction over him. King has presented evidence that he is a resident of the State of Tennessee, that he does not own any property in Michigan, and that he has never been to Michigan, except, possibly, to change planes or during a layover. (Dkt. No. 222, King Decl. ¶ 4.) King has presented evidence that he is a member of BL Supplements, LLC, a Nevada limited liability company and online retailer of dietary supplements that operates and owns the domain name www.top5supps.com. (King Decl. ¶ 2.) King has presented evidence that BL maintains no business operations or activities in Michigan, has never been authorized to transact business in Michigan, has never maintained offices or employees in Michigan, has never advertised in Michigan, and has not been required to pay any taxes in Michigan. (Dkt. No. 222, BL

5

Decl. ¶¶ 3-5.) King maintains that any contact he has had with the State of Michigan has been solely through business transactions conducted by BL. (King Decl. ¶ 5.)

In response, Plaintiff has presented evidence that King was the registrant for top5supps.com, and that BL was not formed until February 29, 2012. (Dkt. No. 236, Pl. Resp., Exs. B, C.)

For purposes of this motion, the Court is satisfied that Plaintiff has made a prima facie showing that, at least until February 29, 2012, King was the owner of the top5supps.com website. Accordingly, the Court must determine whether Plaintiff has made a prima facie showing of personal jurisdiction over King based on his operation of the Top5 website.

This Court has previously held in this case that where personal jurisdiction is based on an interactive commercial website, courts require something more than the mere accessibility of the website by residents of the forum state to demonstrate that the defendant directed its activity towards the forum state. (Dkt. No. 258, Op. 6.) King has not denied that Top5 has done business in this state. In fact, King noted in his affidavit that any contact he has had with the State of Michigan has been solely through business transactions conducted by BL, the online retailer of dietary supplements that operates and owns the domain name [www.top5supps.com.](www.top5supps.com) (King Decl. ¶¶ 2, 5.) Because King has not come forward with any evidence to challenge Plaintiff's assertion that he is doing business in this district through the Top5 website, the Court is satisfied that Plaintiff has met its burden of making a prima facie showing that the court has personal jurisdiction over Defendant King.

6

**B. SLK**

With respect to Defendant SLK, Plaintiff has specifically alleged that SLK is a Georgia limited liability company with its principal place of business in Georgia, and that it does business in the district by introducing the STIFF NIGHTS product into the normal stream of commerce which is sold and offered for sale in this district. (Compl. ¶¶ 74, 75.) Plaintiff has attached to the complaint an email from the attorney for Premiere Sales Group, Inc., a California distributor of products to adult businesses throughout the United States, which states that Premiere purchased "the subject product" from five distributors, including SLK.

SLK contends that the Court lacks personal jurisdiction over it. SLK is a Georgia limited liability company, whose sole place of business is located in Eatonton, Georgia. (Dkt. No. 241, Ex. A, Kent Decl. ¶ 2.) SLK has presented evidence that it has never registered to do business in Michigan, has never conducted business in Michigan, has no employees or offices in Michigan, has never maintained any real or personal property in Michigan, has never shipped products into Michigan, has never had any accounts or paid any taxes in Michigan, and has never been involved in a legal proceeding in Michigan. (Kent Aff. ¶¶ 5-12.)

The email from Premier's attorney does not identify "the subject product" as STIFF NIGHTS. Nevertheless, viewing the email in the light most favorable to Plaintiff, the Court is satisfied that the email's reference to the "subject product" is a reference to the STIFF

7

NIGHTS product. Even so, the email only suggests that SLK sold a product bearing the STIFF NIGHTS mark to a company located in California. The email does not provide evidence SLK sold STIFF NIGHTS in Michigan, or that the product it sold to Premiere entered the State of Michigan. At best it shows that SLK placed a product into the stream of commerce where it might enter the State of Michigan. Such activity, without more, does not satisfy the requirements of due process. "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion). "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* The Sixth Circuit has adopted Justice O'Connor's stream of commerce "plus" approach. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003).

Viewing the pleadings and the affidavits in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not established "with reasonable particularity" sufficient contacts between Defendant SLK and the State of Michigan to support the exercise of personal jurisdiction over SLK. The Court will accordingly grant SLK's motion to dismiss for lack of personal jurisdiction.

### III.

Defendants have moved for dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In reviewing Defendants' motion, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 ( 2012) (quoting *Iqbal*, 556 U.S. at 678). To survive a motion to dismiss, the well-pleaded facts only need to be plausible; they do not need to be probable or persuasive. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,

648 F.3d 452, 458 (6th Cir. 2011).

**A.  Unlawful Use**

Defendants move to dismiss Plaintiff's Complaint based on their contention that Plaintiff does not have a valid protectable right on which to base its claims because Plaintiff's alleged rights are based on unlawful activity.  In support of this contention, Defendants have produced evidence that the owner of Plaintiff Impulsaria LLC is named as an unindicted co-conspirator in a federal indictment against the supplier of Plaintiff's STIFF NIGHTS product on charges of conspiracy to introduce misbranded drugs into interstate commerce, wire fraud, and mail fraud.  *United States v. Harvey*, 2:11-CR-276 (D. Utah Apr. 6, 2011).

Defendants' argument raises the unlawful use defense.  *See CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (holding that only lawful use in commerce can give rise to trademark priority).  Although the unlawful use defense has been recognized by the Trademark Trial and Appeal Board, it has not been widely adopted by the federal courts.  *See Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007).  Its application in infringement cases has also been questioned by leading secondary authorities.  *See* 3 McCarthy on Trademarks and Unfair Competition § 19:124 (4th ed.) ("I believe that the Ninth Circuit [in *CreAgri*] erred in unthinkingly wrenching a draconian version of the U.S.P.T.O.'s 'unlawful use' policy out of its administrative registration setting and inserting it into federal court infringement lawsuits.").  It is unclear whether the Sixth

Circuit would approve the application of this defense. Moreover, the unlawful use defense is not generally applied absent a finding of unlawful use by a court or appropriate government agency, or a clear per se violation. *Dessert Beauty*, 617 F. Supp. 2d at 190; 3 McCarthy on Trademarks § 19:124. Defendants have not presented evidence that Plaintiff's owner has been found guilty of introducing misbranded drugs into commerce. Defendants have presented only an indictment, which is an accusation, not evidence of guilt. *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007).

Moreover, for purposes of analyzing Defendants' 12(b)(6) motions to dismiss, the more important consideration is that "unlawful use" is an affirmative defense. *Dessert Beauty*, 617 F. Supp. 2d at 190. Although a motion to dismiss can be premised on an affirmative defense, the applicability of the defense must appear on the face of the complaint. *Marsh v. Genentech, Inc.*, 693 F.3d 546 (6th Cir. 2012) (citing 5B Charles Alan Wright, Arthur Miller, Mary Kay Kane & Richard Marcus, Federal Practice & Procedure § 1357 at 713 (3d ed. 2004)). Here, the "unlawful use" defense does not appear on the face of the complaint. Plaintiff has alleged that it has a registered trademark, which creates a presumption of validity. *See* 15 U.S.C. §§ 1057(b), 1115(a); *Zobmondo Entm't, LLC v. Falls Media*, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010) (holding that a federal trademark registration provides "prima facie evidence" of the mark's validity and entitles the plaintiff to a "strong presumption" that the mark is a protectable mark). Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in its favor, the Court is satisfied

that the complaint states sufficient factual matter to state claim to relief that is plausible on its face.

**B. Abandonment**

Defendants have also moved for dismissal of Plaintiff's complaint on the basis of abandonment. Plaintiff has alleged that it has not distributed or authorized the manufacture, distribution, or sale of its STIFF NIGHTS dietary supplements since June of 2010, and voluntarily recalled lot numbers of the STIFF NIGHTS product produced before June of 2010. (Compl. ¶¶ 121, 122.)

Based on these allegations and Plaintiff's failure to use the STIFF NIGHTS mark for over two years, Defendants contend that Plaintiff abandoned any and all use of its mark in June 2010.

A registered trademark is deemed to be abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. The party challenging a trademark has the burden of proving abandonment by a preponderance of the evidence. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000) (citing 15 U.S.C. § 1127). The burden includes establishing the intent element. *Id.* Nonuse for three consecutive years is prima facie evidence of abandonment, and creates a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use. *Id.*

The complaint does not establish that Plaintiff abandoned the mark as a matter of law.

12

There is no suggestion that the nonuse continued for three consecutive years. Moreover, Plaintiff has alleged that it stopped manufacturing and distributing the STIFF NIGHTS product so that it could identify the sources of the counterfeit STIFF NIGHTS product. (Comp. ¶ 122.) Plaintiff has also alleged that it has recently undertaken efforts to reintroduce the STIFF NIGHTS product back into the marketplace. (Compl. ¶ 123.) These allegations are sufficient to support a reasonable inference that Plaintiff did not intend to abandon use of the mark. Accordingly, the complaint is not subject to dismissal on the basis of abandonment.

**C. Dilution**

The complaint includes a claim that Defendants are liable for Federal Trademark dilution under 15 U.S.C. § 1125(c).

The Federal Trademark Dilution Act (FTDA) as amended by the Trademark Dilution Revision Act of 2006 (TRDA), provides in pertinent part:

> [T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). For purposes of the TDRA, a mark is "famous" if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "By using the

13

'general consuming public' as the benchmark, the TDRA eliminated the possibility of 'niche fame,' which some courts had recognized under the previous version of the statute." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012).

There is no bright line test for determining whether a mark is "famous." The Act provides that in determining whether a mark is famous, the court must consider "all relevant factors," including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

Plaintiff has not alleged that its mark is "famous." Plaintiff has, however, alleged that it is the sole source of the dietary supplement sold under the STIFF NIGHTS brand name, that its trademark and trade dress have been in use in commerce since 2007, and that it was one of the fastest growing dietary supplement providers in the United States in 2009. (Compl. ¶¶ 102-06.) Plaintiff has also alleged that between 2007 and 2010, it sold in excess of 2 million packages of the STIFF NIGHTS brand herbal supplement, which accounted for an estimated 80% of the market share for male herbal sexual stimulants. (Compl. ¶ 116.) Plaintiff has alleged that it is recognized as a provider of dietary supplements in the United States and that through widespread and favorable public acceptance, Impulsaria's mark and

14

trade dress have gained a reputation as a distinctive indication of the origin and quality of Impulsaria's goods. (Compl. ¶¶ 168-69.)

"Whether a mark is famous under the TDRA is a factual question reviewed for substantial evidence." *Coach*, 668 F.3d at 1373. The Court has grave doubts about Plaintiff's ability to succeed on its claim that its male herbal sexual stimulant is "widely recognized by the general consuming public" or that it has more than "niche" fame. On a Rule 12(b)(6) motion, however, the Court is not concerned with Plaintiff's likelihood of success. The Court is satisfied that Plaintiff has pleaded sufficient factual matter to state a dilution claim that is plausible on its face. Whether Plaintiff can succeed on its claim will be subject to factual development. Accordingly, Defendants' motion to dismiss Plaintiff's dilution claim will be denied.

**D. Claims Against Individual Defendants**

Defendant E&A and Defendants King and Top5 have also moved for dismissal on the basis that Plaintiff's claims against each of them are too speculative. Defendants acknowledge that Plaintiff's complaint technically recites the elements of an infringement, but nevertheless contend that the specific allegations are insufficient to state a plausible claim against each of them.

Defendant E&A contends that Plaintiff's claims against it are based on a single sales invoice from E&A describing delivery of products to Haslett Investments on March 15, 2011. (Compl., Ex. 32, Page ID#789.) The invoice identifies 6 products, none of which is

15

identified as STIFF NIGHTS. Defendant E&A also contends that Plaintiff has not alleged that if such product did exist, it was counterfeit and was not legally obtained from Plaintiff.

Defendants King and Top5 contend that the entire basis for Plaintiff's claims against them is a printout from the Top5 website, which is entitled "Evidence of counterfeit sales by Blake King dba www.top5supps.com." (Dkt. No. 62, Second Am. Compl. Ex. 21.) The Top5 website offers Stiff Nights products for sale. Defendants contend, however, that because there are no invoices, there is no evidence that they sold or shipped any STIFF NIGHTS products into Michigan. Defendants also contend that there are no allegations to support a claim that the products were counterfeit as opposed to products that were legally obtained from Plaintiff.

There is no requirement that a plaintiff attach evidence to its complaint to support its allegations against a defendant. However, in this case, the evidence does tend to provide some factual content to the complaint's otherwise conclusory allegations that are directed against all Defendants. The Court is satisfied that the evidence Plaintiff has attached to its complaint is sufficient to make the allegations against the individual Defendants plausible as opposed to speculative. Moreover, Plaintiff's allegations that it recalled the STIFF NIGHTS product it produced before June of 2010, and that it has not manufactured or distributed the product since June of 2010 (Compl. ¶¶ 121-22), are sufficient to create a reasonable inference that any product Defendants offered for sale was counterfeit product rather than product legally obtained from Plaintiff. The Court concludes that Plaintiff has

16

alleged sufficient facts to state a claim against these individual Defendants.

### IV.

Defendants SLK and E&A have also moved for dismissal on the grounds of *forum non conveniens*. Defendant SLK contends that the District of Georgia is a more appropriate forum. Defendant E&A contends that the District of New Jersey is a more appropriate forum.

A complaint will not be dismissed on *forum non conveniens* grounds unless the defendant establishes "first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil*, 330 U.S. at 508-09, 67 S.Ct. 839, reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The private interests listed in *Gulf Oil* include considerations involving access to sources of proof, compulsory process and the cost of obtaining witnesses, the possibility of viewing the premises, and all other practical problems that make trial of a case easy, expeditious, and inexpensive. 330 U.S. at 508. A plaintiff's choice of forum should rarely be disturbed. *Id.* The public interests to be balanced against the private interests include considerations such as court congestion, the imposition of jury duty on citizens with no relation to the litigation, the interest in having local controversies decided at home, and the interest in trying the case in a forum that is at home with state law that governs the case. *Id.* at 508-09.

Plaintiff has its principal place of business in Michigan, and Plaintiff has alleged that all of the Defendants have sold counterfeit STIFF NIGHTS product in Michigan. Many of the Defendants reside in Michigan. Although Michigan would not be the most convenient forum for all of the Defendants, it appears to be the only forum where all of Plaintiff's claims against all (or almost all) of the Defendants can be heard. Michigan is Plaintiff's chosen forum, and it is also the forum where the case could be most tried most expeditiously and inexpensively. Accordingly, Defendants' motions to dismiss on the basis of *forum non conveniens* will be denied.

## V.

For the reasons stated, Defendant SLK's motion to dismiss for lack of personal jurisdiction will be granted, and Defendants E&A, King, and Top5's motions to dismiss will be denied.

An order consistent with this opinion will be entered.


Dated: <u>October 18, 2012</u>              /s/ Robert Holmes Bell            
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE